Keith D. SELLERS

v.

Leroy ROPER, et al.

Civ. A. No. 82–0061–R.

United States District Court,
E.D. Virginia,
Richmond Division.

Dec. 28, 1982.

Keith D. Sellers, pro se.

Richard L. Jones, Petersburg, Va., for defendants.

## OPINION

WARRINER, District Judge.

Plaintiff, inmate at Mecklenburg Correctional Center, proceeding *pro se* and *in forma pauperis,* filed this action on 11 March 1982, alleging violations of his constitutional rights under § 1983. Defendants responded with a motion for summary judgment supported by affidavits on 21 April 1982. Plaintiff thereupon filed a motion for summary judgment on 12 May 1982, to which defendants responded on 18 May 1982. The parties' respective motions for

summary judgment are now ripe for consideration.[1]

Plaintiff advances several charges, namely that:

1) defendant Kenneth L. Bage, Officer at the Petersburg Correctional Center, battered him on 30 July 1981;

2) plaintiff was improperly committed to isolation pending an Adjustment Committee hearing and appeal on a charge relating to this incident;

3) plaintiff has been denied outdoor physical recreation; and

4) plaintiff has been denied access to a law library.

## I.

With regard to his first charge, plaintiff claims that on 30 July 1981 he was walking down a hall to get a cleaning implement in connection with the authorized cleaning of a cell when defendant Bage stopped him, asked where he was going, and grabbed plaintiff's wrist when plaintiff proceeded to walk on. Plaintiff describes a scuffle that ensued, with defendant grabbing plaintiff, forcing him to bend over, and elbowing him in the back.

In an affidavit, defendant Bage responds that plaintiff was not on the clean-up crew and was supposed to be on his way to the library. Defendant asked or ordered plaintiff to enter the library but plaintiff refused, insisting that he was going to help the clean-up crew. Defendant asserts that plaintiff started the scuffle and defendant describes the scuffle in terms similar to plaintiff's, adding that two other inmates got involved.

Though the charge of unjustified striking has recently been several times addressed in this Circuit, the Court is seriously concerned that the applicable law provides inadequate guidance as to how it should be treated.

In *King v. Blankenship,* 636 F.2d 70 (1980), the Fourth Circuit Court of Appeals held that "the unjustified striking, beating, or infliction of bodily harm upon a prisoner gives rise to liability under 42 U.S.C. § 1983 on the part of one who, acting under color of State law, engages in such conduct without just cause." *Id.* at 72. Having made this declarative statement of the law, the Court of Appeals noted, however, that § 1983 imposes liability for violations of rights protected by the U.S. Constitution in contradistinction to liability arising out of tort law. *Id.* at 73, *quoting Baker v. McCollan,* 443 U.S. 137, 139, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979). The Circuit Court stated that the key phrases, "unjustified striking" and "without just cause" must be read with reference to the Eighth and Fourteenth Amendments and not to State tort law. The Fourth Circuit's formulation does not give guidance as to where the line is crossed from a tort "unjustified striking" to a constitutional "unjustified striking" other than by reference to *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.) *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973).

The Court's rule is evidently followed in a subsequent unpublished opinion in *Cooper v. Baines,* 691 F.2d 493 (4th Cir.1982). In *Cooper,* plaintiff was struck several times by defendant and claimed a deprivation of constitutional rights, presumably the right to be free from "cruel and unusual punishment" or perhaps a due process liberty violation. The Court reversed summary judgment since "[a]t issue is the amount of force used by defendants and whether that force is justified." *Cooper* at slip op. 3. *See* to the same effect *Grier v. Keever,* 694 F.2d 716 (4th Cir.1982); *Lew v. Hutto,* 691 F.2d 492 (4th Cir.1982).

This Court must admit that it is rudderless on the problem. While the Court of Appeals has stated that the phrase "unjustified striking must be read with reference to constitutional law," that Court has provided no standard for determining when a blow is

---

1. The Court is in receipt of plaintiff's motion, filed 12 October, for reconsideration of an order entered 31 August denying plaintiff's request for a jury trial. Plaintiff has not alleged suffi-cient grounds for vacating the previous order and the following disposition of the case otherwise moots plaintiff's request.

a mere tort and when it is a constitutional deprivation.

Clearly, the amount of force used, *Cooper v. Baines* at slip op. 3, cannot in itself be dispositive. As the Supreme Court held in *Screws v. United States,* 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1944), "the fact that a prisoner is assaulted, injured, or even murdered by state officials does not necessarily mean that he is deprived of any right secured by the Constitution or laws of the United States." *Id.* at 108–109, 65 S.Ct. at 1039; *see Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1980). *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Paul v. Davis,* 424 U.S. 693, 705, 96 S.Ct. 1155, 1162, 47 L.Ed.2d 405 (1976).

*King* and its progeny simply do not specify just how hard a blow must be to violate the Constitution. They do not state whether this inquiry should depend on the relative size of victim and assailant or on an unexpected and unknown vulnerability of the victim. How is a judge or jury to know? The glib answer may be that a judge must determine when the line has been crossed on a case-by-case basis. But *King* provides no rationale to guide the Court on a case-by-case basis.[2]

Indeed, *King's* vagueness necessarily requires that all such cases be heard *ore tenus* to determine how hard the blow was in the context of all facts and circumstances. U.S. district courts are thus a special forum in which to litigate fights between prisoners and guards. More pertinent to this opinion, even after making the factual determination by means of an evidentiary hearing, the District Court has no standard by which to gauge whether that force was unconstitutionally excessive.[3] What words should a trial court use in instructing a jury to determine when the constitutional line has been crossed? *King* gives no model instruction nor even a rationale upon which an instruction can be modeled.

Despite twenty-five years' experience first as a lawyer then as a judge, I reluctantly find that I do not know the law on when a fight between a guard and a prisoner violates the U.S. Constitution. Both the trial courts and the litigants deserve to know the limits and the implications of this constitutional right.

The Court would note further that the opinion in *King v. Blankenship,* (as well as *Johnson v. Glick* ) fails to consider the adequacy of the statutory and common law tort remedies available in State court as we have been directed to do by the Supreme Court in the case of other common law torts. *See e.g. Parratt v. Taylor, Estelle v. Gamble, Paul v. Davis, Ingraham v. Wright.* Under *King* there will be a considerable further expansion of actions by State prisoners under 42 U.S.C. § 1983. And given the present guidance a trial will be necessary in every case. *Johnson v. Glick* at 1030. Yet, the Supreme Court has held that § 1983 was not intended to be a font of tort law. *Paul v. Davis,* 424 U.S. at 700–701, 96 S.Ct. at 1160–61.

**2.** The Court does not identify its authority in *King v. Blankenship,* aside from adverting to the distinction made in *Baker v. McCollan* between constitutional deprivations and torts and citing *Johnson v. Glick* and other cases for similar holdings. *Johnson v. Glick* determined that the Eighth Amendment's prohibition against cruel and unusual punishment did not apply to an unjustified striking. Rather, it cited *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1951) for a prohibition of State conduct that does more than offend some "fastidious squeamishness." *Rochin* referred to the familiar "shocks the conscience" rule. *Id.* at 172, 72 S.Ct. at 209.

**3.** In *Cooper,* the Court of Appeals also directed the trial court to determine "whether the force used was justified." This directive, however, gives the District Court no guidance in attempting to separate State torts from constitutional torts. If force is justified, no State tort is stated. If it is not justified, a State tort is assuredly stated. Thus, the presence, *vel non,* of justification does not help differentiate between State and constitutional torts. Justification is not even a matter of degree, as in the question of "amount of force; " justification either exists or it does not. If it is absent, a State tort is presented but no help in determining whether a constitutional tort may also then be presented is derived from finding an absence of justification.

█ This Court holds the view that *Screws* and its progeny, *e.g. Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711; *Paul v. Davis,* 424 U.S. 693, 705, 96 S.Ct. 1155, 1162, 47 L.Ed.2d 405; *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251; *Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433; *Parratt v. Taylor,* 451 U.S. 527, 543, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420, require a finding that an allegation of unjustified striking alone, without a factual allegation of, for instance, a striking affecting other substantive constitutional rights of a plaintiff,[4] simply does not state a constitutional claim and that a prisoner should therefore pursue tort remedies in State court.[5] This Court is nevertheless constrained somehow to apply language set forth in *King v. Blankenship* and the subsequent unreported cases.

The Fourth Circuit Court of Appeals has stated that

> While the precise formulation of when the excessive use of force gives rise to a viable § 1983 claim is not an easy one, the factors which must be considered are: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; and (4) whether force was applied in a good faith effort to maintain or restore discipline, or maliciously or sadistically for the very purpose of causing harm.[6]

*Lew v. Hutto,* 691 F.2d 492 (4th Cir.1982) citing *Johnson v. Glick,* 481 F.2d 1028, 1033; see *King v. Blankenship,* 636 F.2d 70.

Applying these factors to the case at hand, the Court recognizes the strength of defendants' argument that the use of force was justified under the circumstances presented by the record. Defendant Bage avers that plaintiff was supposed to be on his way to the library when defendant asked or ordered plaintiff to enter the library. Plaintiff refused, insisting that he was going to help a clean-up crew to which he had not, however, been assigned. Defendant asserts that plaintiff started the scuffle; defendant describes the scuffle in terms similar to plaintiff's, adding that two other inmates got involved. Plaintiff has not directly disputed this account of the facts but it is not perfectly clear that under no provable set of facts plaintiff will be unable to prove lack of justification. *Stevens v. Howard D. Johnson Co.,* 181 F.2d 390, 394 (4th Cir.1950); *cf. Cruz v. Beto,* 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) (motion to dismiss).

As regards the second and third factors, relating to the proportionality of the amount of force that was used to the need, it appears the amount of force was minor as was the need for the application of force. But only an *ore tenus* hearing can resolve this second issue. Also, it appears there was no lasting injury, but the Fourth Circuit gave no standard, such as lasting; it requires inquiry into "extent" of injury. Hence an evidentiary hearing may be required on the third factor.

The Court is additionally to inquire whether the force was applied in a good faith effort to maintain or restore discipline. Although plaintiff does not allege malice in so many words, the very expression of this grievance may indicate his conclusion that the application of force was not necessary under the circumstances. Defendant Bage's explanation, involving his response to plaintiff's disobedience to an order, seeks to justify his application of force as necessary to discipline and order.

---

**4.** The Supreme Court has identified a right to be free of physical punishment meted out without due process of law. *Ingraham v. Wright,* 430 U.S. at 674, 97 S.Ct. at 1414.

**5.** *Cf. Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976): "Medical malpractice has not become a constitutional violation merely because the victim is a prisoner." *Id.* at 106, 97 S.Ct. at 292.

**6.** It should be noted that this "formulation" does not differentiate between a common law tort and a constitutional tort. Even after analysis of the facts in a given case, one cannot, under this formulation, divine whether the Constitution has been violated.

The Court concludes that this factor also raises a question of fact not resolved in the record. The Court understands *King v. Blankenship,* as interpreted in subsequent unpublished opinions, to require an evidentiary hearing to determine these questions.

The Court concludes, however, that such a factual determination would not provide a resolution to the fundamental questions raised by this case. After determining the facts, the Court (or the jury) would still be without a yardstick to apply to the facts as found. Rather than flounder in this morass, the Court will follow the path indicated by *Screws* and its progeny, *supra,* and declare that whatever constitutional right plaintiff was deprived of by the fight, the deprivation was not without due process since he can sue his antagonist, in personam, for assault and battery in the Courts of the Commonwealth. This disposition, if it is appealed, may bring forth from the Court of Appeals, the guidance which I believe presently is lacking.

## II.

Plaintiff further argues that pending the Adjustment Committee hearing on the disciplinary charge associated with the above incident of disobedience of a direct order, plaintiff was improperly placed in segregation. Plaintiff charges that after a finding of guilty, he was improperly continued in segregation while he was appealing this finding. Defendant asserts that plaintiff was charged with failing to obey a lawful order on 30 July 1981 and that the Adjustment Committee hearing was held on 4 August 1981. Defendant states that plaintiff was removed to Southampton Correctional Center at the conclusion of plaintiff's segregation, rendering plaintiff's appeal from the Adjustment Committee moot, whereupon review was terminated.

If sufficiently prolonged and associated with substantial deprivations, segregational custody may amount to a grievous loss, requiring a pre-detention hearing, *La Batt v. Twomey,* 513 F.2d 641, 646 (7th Cir.1975). A court will look to the degree and length of deprivation and the reasons

segregation was imposed. *Id.* In *La Batt,* the Court found that 24-hour deadlock custody for nine days pending prison authorities' attempts to notify other State agencies did not amount to a violation of the inmate's constitutional rights. *Id.* In the case at hand, plaintiff was charged on 30 July and was notified on 31 July that the matter had been referred to the Adjustment Committee; the Adjustment Committee hearing was held on 4 August 1981. After having been sentenced to fifteen days isolation by the Adjustment Committee, plaintiff was credited with the time spent in segregation prior to the hearing. On this record, the Court concludes that plaintiff's treatment did not violate any right he had under the Court.

Guideline 861 of the Virginia Department of Corrections Institutional Guidelines provides that "pre-hearing detention is authorized only when the accused inmate's behavior is considered to be *dangerous to persons or property*" (emphasis in original) and that it is to be authorized by the officer in charge for two days only, except in the case of an institutional emergency or some other contingency. Guideline 861E. It is unclear on this record that disobedience to an order rises to the Guideline's standard for authorizing pre-hearing detention or that an institutional emergency justified prolonged detention in this case. While it is to be hoped that the prison follows administrative guidelines, evidently intended to maintain order and discipline, violation of Guideline 861 in this case, if shown, would not state a claim under § 1983. The Fourth Circuit Court of Appeals has recently held that there is no liberty interest associated with administrative policy guidelines. *Gorham v. Hutto,* 667 F.2d 1146, 1148 (1981).

Plaintiff was committed to isolation after sentencing and pending appeal. Plaintiff argues that segregation pending appeal was improper. While it may be improper it is not unconstitutional. It is a part of the common law, *see Wansley v. Wilkerson,* 263 F.Supp. 54, 57 (W.D.Va.

1967), and is provided for in the U.S. Criminal Code, 18 U.S.C. § 3148 (1976) and in Rule 46, Fed.R.Crim.P. Accordingly, plaintiff's claims regarding pre-hearing detention and segregation pending appeal should be dismissed.

Plaintiff's third claim relates to the lack of opportunity for recreation, particularly outdoors. Defendants respond that the cell block where plaintiff was housed consists of individual cells opening onto a common area that runs the full length of the cell block and is about ten feet wide. Defendant asserts that this provides ample room for exercise; plaintiff argues that due to occasional crowding, this area is not always sufficient to allow for exercise. Defendant admits that there are no facilities for outside recreation.

The Fourth Circuit Court of Appeals has held that restriction to two one-hour exercise periods per week over an extended period will constitute cruel and unusual punishment if it is determined to be harmful to a prisoner's health, *Sweet v. South Carolina Dept. of Corrections,* 529 F.2d 854, 865–66 (4th Cir.1975). However, no constitutional violation is stated where inmates have access to an indoor day room for 18 hours per day and are encouraged to use this room for exercise and physical activity, *Clay v. Miller,* 626 F.2d 345 (4th Cir.1980). Plaintiff has alleged neither a medical necessity for outside exercise nor injury that the lack thereof has inflicted on him. While plaintiff's claim that the facilities are not adequate for exercise may have some validity, particularly at those times when the prison is crowded, inadequate exercise facilities is not another name for unconstitutional exercise facilities, *i.e.,* cruel and unusual punishment.

Plaintiff also claims that he has been denied access to a law library. Defendants note that the jail does not have a law library. Defendant Robert B. Bragg, Jr., Chief Jailor, avers in his affidavit that inmates are provided with the services of an attorney. Plaintiff does not deny this statement. Under *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977),

the State must affirmatively provide prisoners with either law libraries or counsel to advise with respect to post-conviction proceedings and civil rights actions. *Id.* at 828, 97 S.Ct. at 1498. It need not, however, provide both a library and a lawyer, *Williams v. Leeke,* 584 F.2d 1336, 1340 (4th Cir.1978). Accordingly, the Court finds that defendants have provided plaintiff with adequate access to the courts under *Bounds.*

In connection with the charge of inadequate access, plaintiff raises the new claim in his motion for summary judgment that he was not afforded adequate access to a telephone. The Court in *Jones v. Wittenberg,* 330 F.Supp. 707 (N.D.Ohio 1971), held that restrictions on telephone communication of an inmate could be justified as a form of punishment. *Id.* at 718–719. It concluded that only an inmate awaiting trial and requiring a telephone to obtain counsel and prepare his case would have a right to access, though even that access could be restricted. *Id.* This Court concludes likewise that an inmate awaiting trial and requiring a telephone to obtain counsel may make out a claim of a constitutional deprivation in a particular case. Plaintiff here has alleged neither that he has this special need for access to a telephone nor that the mails are inadequate to serve his particular need for communication with lawyers and courts. This claim must be dismissed.

Plaintiff argues in addition that the charge of disobeying a direct order was improperly heard by an Adjustment Committee that was not impartial because it convicted him without sufficient evidence. Defendant Bragg states in his affidavit that plaintiff was notified of the Adjustment Committee hearing on 31 July 1981, that plaintiff, advised by another inmate, furnished a list of witnesses on 3 August. Defendants submitted a typed summary of the Adjustment Committee hearing, signed by plaintiff, reporting that testimony was given on the charge by defendant Kenneth Bage; plaintiff was allowed to present wit-

nesses. It appears that the procedural requirements imposed by *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), have been satisfied, and plaintiff does not challenge the hearing on that ground. Rather, he argues that there was no evidence to support a conviction and thus that the substantive outcome was improper. As this Court found, *supra,* plaintiff probably was in disobedience of an order and the Court could not on this record find the conviction to have been without support in evidence. In any case, the Court will not serve as a reviewing body of the accuracy of a disciplinary committee's findings of fact, *Flythe v. Davis,* 407 F.Supp. 137, 138 (E.D.Va.1976). Accordingly, plaintiff's claims in this regard must be dismissed.

■ Finally, plaintiff makes the new argument in his motion for summary judgment that he was afforded insufficient clean linen, towels, sheets, socks and other clothing. However, living conditions that are not cruel and unusual are not unconstitutional; to the extent that such conditions are restrictive or even harsh, they are part of the penalty a criminal defendant must pay for an offense against society, *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1980). The Court concludes that plaintiff's charge does not make out a constitutional claim.

For the foregoing reasons, defendants will be granted summary judgment and plaintiff's motion will be denied.

An appropriate order shall issue.

Should plaintiff desire to appeal, written notice of appeal must be filed with the Clerk of the Court within 30 days of the entry hereof.