**Nicholas BUR, Plaintiff,**

v.

**Charles GILBERT and Dennis Kocher, Defendants.**

**No. 73-C-105.**

United States District Court,
E. D. Wisconsin.

June 23, 1976.

Nicholas Bur, pro se.

James B. Brennan, City Atty., by Grant F. Langley, Asst. City Atty., Milwaukee, Wis., for defendants.

## MEMORANDUM OPINION AND ORDER

REYNOLDS, District Judge.

This *pro se* action is brought under 42 U.S.C. § 1983 and arises out of the plaintiff's arrest by Milwaukee police detectives on February 11, 1972. The arrest was made by police officers of the City of Milwaukee, but took place in the City of Wauwatosa. The complaint originally named as defendants the cities of Milwaukee and Wauwatosa, the chiefs of the police departments of both cities, two Wauwatosa police officers who accompanied the Milwaukee police officers to the scene of the arrest, and the two Milwaukee police detectives who actually made the arrest. In a decision and order dated July 18, 1974, this Court dismissed the action as to both city defendants and the Milwaukee police chief and granted summary judgment in favor of the Wauwatosa police chief and both Wauwatosa police officers. The two Milwaukee police detectives, Charles Gilbert and Dennis Kocher, are thus the only defendants remaining in this action.

With respect to the remaining defendants, the complaint seeks $2500 in damages for the unlawful arrest of the plaintiff on charges of operating an unregistered or improperly registered motor vehicle, § 341.04, Wis.Stats., and resisting or obstructing an officer while such officer is doing an act in his official capacity and with lawful authority, § 946.41, Wis.Stats. The complaint also alleges that unnecessary and excessive force was used by those defendants in effectuating the aforementioned arrest. On December 11, 1975, defendants Gilbert and Kocher moved for an order granting summary judgment in their favor and against the plaintiff, pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons hereinafter stated, the Court has concluded that the defendants' motion must be granted.

From the pleadings and papers on file in this case, and from the affidavits and documents submitted in support of and in opposition to the motion for summary judgment, the following facts appear: On October 5, 1971, the plaintiff was issued a traffic citation and complaint in the form prescribed by § 345.11, Wis.Stats. The citation and complaint was signed by Officer Carl Karwack, and charged the plaintiff with a violation of § 341.04, Wis.Stats. The citation and complaint further notified the plaintiff that he had to appear in Branch 3 of the Milwaukee County Court, Room 635, Milwaukee County Courthouse, at 8:30 A. M. on November 30, 1971. The citation and complaint was subsequently sworn to before a Milwaukee County Court Commissioner, Herbert Schultz, on November 11, 1971, and filed with the clerk of court for the Milwaukee County Court on November 24, 1971.

The car the plaintiff was driving when he received the citation was a 1972 Chevrolet purchased 11 days earlier, on September 24, 1971, from the Humphrey Chevrolet Company. It appears that Humphrey Chevrolet undertook to arrange for the mechanics of transferring the title for the 1972 Chevrolet to the plaintiff. As is permissible in Wisconsin, the plaintiff physically transferred his license plates from a 1968 Ford, which was his "trade-in" for the 1972 Chevrolet, to the latter vehicle. These plates expired at the end of September 1971, but the plaintiff believed that a title certificate was necessary before the registration plates on the 1972 Chevrolet could be renewed. Plaintiff nevertheless thought (and indeed, presently maintains) that operation of the 1972 Chevrolet on and after October 1, 1971, was sanctioned by § 341.04(1)(a), Wis. Stats.:

> "A vehicle may be operated by a private person after the date of purchase of such vehicle by such private person * * * if application for registration and certificate of title has been made."

The plaintiff assets that he tried to explain the foregoing facts to Officer Karwack on October 5, 1971, but that Karwack nevertheless issued the citation and complaint. Thereafter, on October 18, 1971, the plaintiff received his title certificate for the 1972 Chevrolet, and mailed the title certificate, application form, and registration fee to the State of Wisconsin.

Plaintiff claims that he did not appear in Milwaukee County Court as directed by the citation and complaint for two somewhat inconsistent reasons: (1) he had lost his copy of the citation, and (2) he had not yet received his new license plate stickers, and believed that until he had such stickers to display to the county court judge, the traffic citation would not be voided. Upon the plaintiff's failure to appear on November 30, 1971, Judge Louis J. Ceci ordered that a warrant be issued for his arrest. A warrant was subsequently issued, signed by Court Commissioner Herbert Schultz, on February 4, 1972. Although § 345.37, Wis. Stats. provides that "[i]f the defendant fails to appear in court at the time fixed in the citation * * * (1) * * * the court may issue a warrant under ch. 968," it does not specify what provision of Chapter 968 is applicable. While § 968.09, Wis.Stats. authorizes the issuance of a bench warrant of arrest upon a defendant's failure to appear as required, the warrant of arrest in this case appears to have been based on the substance of the citation previously issued to the plaintiff—i. e., a violation of § 341.04, Wis.Stats. on October 5, 1971.

Meanwhile, on January 2, 1972, the plaintiff had received his certificate of registration and license plate stickers. On February 10, 1972, Officer Richard L. Kramer of the Milwaukee Police Department called the plaintiff at his home and informed him that the police department was in possession of a warrant for his arrest. At this point, the affidavits differ as to what next occurred: The plaintiff claims that he tried to explain the situation to Officer Kramer, whereupon Kramer hung up. Kramer, in turn, asserts that he advised the plaintiff that he could appear at either the Traffic Bureau or the Fifth District Police Station of the Milwaukee Police Department, and that failing a voluntary appearance, the warrant would be served upon the plaintiff at his home, at which time he would be taken into custody. Kramer further asserts that the plaintiff then stated that he would not voluntarily appear to answer the warrant. The plaintiff denies that Kramer told him of his option of voluntary appearance,

or that he told Kramer he would refuse to so appear.

Thereafter, Officer Kramer forwarded the warrant for the plaintiff's arrest to the Warrant Detail of the Detective Bureau of the Milwaukee Police Department. The following day, February 11, 1972, Detectives Gilbert and Kocher appeared at the plaintiff's place of business, an office building located at 2747 North Mayfair Road, Wauwatosa, Wisconsin. They met the plaintiff in the reception area of the office building, advised him of the existence of the warrant, and placed him under arrest. Once again, the affidavits at this point differ as to what next occurred: The plaintiff maintains that he tried to explain the situation to the defendants, pointing out the certificate of registration in his possession and the then-current registration stickers on his car. When the defendants insisted on following through on the warrant, the plaintiff claims he stated that he would go along voluntarily. As he was putting on his coat, however, the plaintiff maintains that the defendants "grabbed and pulled" him, and then handcuffed him. The defendants, in contrast, claim that they allowed the plaintiff time to get his coat, and that only after a period of time had thereafter expired did they take the plaintiff by the arm to escort him from his office. The defendants assert that the plaintiff then started to struggle with them, whereupon he was placed in handcuffs. One of the attending Wauwatosa officers states that he entered the plaintiff's office after hearing shouting, and observed the plaintiff holding on to a desk and heard him shouting: "I am not going to go!" The plaintiff, in turn, denies holding onto a desk or making any such statement.

After being taken into custody, it appears that the plaintiff was detained for six and one-half hours before being released. Although the complaint states that the plaintiff was arrested not only for the registration offense upon which the warrant of arrest was based, but also for resisting or obstructing an officer, it does not appear that anything ever came of this latter

charge. The registration offense was subsequently prosecuted, but eventually was dismissed by the district attorney on December 12, 1973.

The foregoing statement of facts is a sorry tale of an unfortunate and confused confrontation between a citizen and his government. At all times, it appears that the plaintiff honestly believed that he was innocent of the charged violation of the motor vehicle laws, and if the plaintiff's affidavit is truthful, attempted to explain his position in turn to Officer Karwack, who issued the citation, to Officer Kramer, who called the plaintiff to inform him of the warrant, and to detectives Gilbert and Kocher, who executed the warrant. Despite this belief in his innocence and his attempts to explain, the plaintiff was subjected to the indignity and humiliation of being arrested and handcuffed at the place of his business, and the embarrassment of temporary incarceration. Conversely, from the point of view of the government, the plaintiff had failed to appear at a scheduled court hearing of the underlying charge, and if Officer Kramer's affidavit is truthful, refused to agree to voluntarily appear to answer the then outstanding arrest warrant.

But in passing upon the defendants' motion for summary judgment, it is not necessary or proper for this Court to determine whether one party was "right" and another party "wrong." Plaintiff bases his suit on 42 U.S.C. § 1983, and in ruling on the defendants' motion for summary judgment, the Court should look only to see whether on the basis of the undisputed material facts it can be said as a matter of law that the defendants have not deprived the plaintiff of "any rights, privileges, or immunities secured by the Constitution and laws." Plaintiff maintains that his rights under the Eighth, Ninth, and Fourteenth Amendments to the United States Constitution were violated by the defendants. On the basis of undisputed facts, the Court has concluded that the plaintiff's claim cannot withstand the defendants' motion for summary judgment.

As previously noted, it does not appear that the charge of resisting or obstructing an officer was ever pursued, and neither party has addressed this aspect of the plaintiff's complaint. The Court assumes, however, that a finding that the arrest on the § 341.04 warrant was proper will obviate the necessity of determining whether the concurrent warrantless arrest for resisting or obstructing an officer was itself supported by probable cause. Cf. *Daly v. Pedersen*, 278 F.Supp. 88, 92 (D.Minn.1967).

As a starting point, the Court notes that the element of excessive or unnecessary force is not a prerequisite to or otherwise an essential element of recovery under § 1983. See, e. g., *Droysen v. Hansen*, 59 F.R.D. 483 (E.D.Wis.1973); *Hampton v. City of Chicago*, 484 F.2d 602, 609 (7th Cir. 1973), cert. denied, 415 U.S. 917, 94 S.Ct. 1413, 39 L.Ed.2d 471 (1974); *Beauregard v. Wingard*, 230 F.Supp. 167, 177 (S.D.Cal.1964). Conversely, the use of excessive force in the context of an arrest, albeit an arrest that is itself lawful, is actionable under § 1983. See, e. g., *Clark v. Ziedonis*, 513 F.2d 79 (7th Cir. 1975); *Everett v. City of Chester*, 391 F.Supp. 26 (E.D. Pa.1975). The grounds asserted by plaintiff in support of his recovery are thus independent and severable, and the Court will accordingly consider them separately.

Plaintiff's first theory of recovery is that his arrest on February 11, 1972 was itself unlawful. As previously mentioned, it is plaintiff's position that at no time was he ever in violation of § 341.04—that on October 5, 1971, his operation of a vehicle without a then-current registration was authorized by § 341.04(1)(a), and that on February 11, 1972, his car was registered in compliance with § 341.04(1). Plaintiff further claims that the facts establishing his innocence were brought to the attention of both the officer issuing the citation and the detectives making the arrest. Plaintiff's ingenuous argument is that if he was innocent of the offense charged, how can his arrest for that charge be lawful?

An arrest must meet constitutional standards to relieve the law officer from

possible civil liability under § 1983. *Taylor v. McDonald*, 346 F.Supp. 390, 393 (N.D. Tex.1973). The innocence *per se* of the arrestee is not decisive: "A police officer who arrests someone * * * is not liable * * * simply because the innocence of the suspect is later established." *Perry v. Jones*, 506 F.2d 778, 780 (5th Cir. 1975). Conversely, the guilt of the suspect is not a defense. The time-honored test as to the lawfulness of an arrest is whether the arrest is either with probable cause *or* pursuant to a warrant. "As a general rule an arrest, lacking an appropriate warrant or without probable cause, constitutes a violation of due process giving rise to a claim under § 1983." *Daly v. Pedersen*, 278 F.Supp. 88, 91 (D.Minn.1967).

In the absence of a warrant, the existence of probable cause is decisive: "[A]n arrest made without a warrant does not violate the Constitution only if 'at the moment the arrest was made, the officers had probable cause to make it—[if] at that moment the *facts and circumstances* within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" *Taylor v. McDonald*, 346 F.Supp. 390, 393–394 (N.D. Tex.1972).

In contrast, where an arrest is made pursuant to a warrant, the relevant inquiry is not into whether or not there was probable cause to make the arrest, but whether or not the warrant pursuant to which the arrest was made was valid. Moreover, the nature of the inquiry into the validity of a warrant is different in a situation where the question is the validity of the warrant for purposes of subsequent criminal proceedings than it is where, as here, the question presented is the lawfulness of the arrest for purposes of holding the arresting officer liable for damages. In the former situation, a court might well look back to circumstances preceding the issuance of the warrant, for it is the warrant itself which is in question; in the latter circumstances, the inquiry is not into the validity of the war-

rant *per se*, but rather the propriety of the officers effectuating an arrest pursuant to it. In that situation, the officers need only determine whether the warrant is valid "on its face":

"An officer is protected and justified in executing process fair on its face—that is, process that is issued by a court, magistrate, or body having authority of law to issue process of that nature, is legal in form, and contains nothing to notify or fairly apprise the officer that it is issued without authority. If the process is fair on its face it matters not that it is irregular, and voidable for such irregularity . . . ."

32 Am.Jur.2d, False Imprisonment § 67 (1967).

"It is the duty of the officer to carry out without delay the commands of a warrant which is valid in form and issued by a court of competent jurisdiction, and where a warrant is valid on its face, the officer is under no duty to inquire further into its basis or alleged invalidity before making the arrest . . . ."

6A C.J.S. Arrest § 7 (1975).

■ Plaintiff does not, nor could he in the context of this lawsuit, challenge the issuance of the warrant in question. Nor does the plaintiff argue that the warrant in question was legally defective in form or "on its face." Instead, he maintains that the defendants were informed of circumstances at the time of his arrest which were sufficient to give the arresting officers probable cause to believe that the violation for which the warrant had issued had in fact not occurred. In effect, plaintiff asserts that the existence of a warrant does not vitiate the requirement that an arresting officer have probable cause to arrest, or perhaps more accurately, that an arresting officer with a warrant must nevertheless not have probable cause not to arrest. Whatever practical appeal such a requirement might have must be weighed against the fact that such a requirement pits the arresting officer against the decision of the judicial authority issuing the warrant, in effect compelling him to disobey the judi-

cial order to arrest unless he himself can ascertain that an arrest is in order. Aside from the inherent conflict between the official issuing the warrant and the person executing the warrant which such a requirement would engender, the person executing the warrant is often ill-placed to make such a determination. It would be absurd to require an arresting officer to engage in argument with the person to be arrested when a judicial officer has previously determined that probable cause to arrest exists. Moreover, it is not the law:

"A warrant of arrest is issued by some official authorized by law to perform that duty, usually a magistrate, and it directs the police or other officer to arrest the named person. For example, a Commissioner's warrant in this jurisdiction begins with the words: 'You are hereby commanded to arrest [the defendant]'. Thereafter the police officer has no concern whatever with the question whether the person should or should not be arrested. The officer with a warrant has one duty and one duty only; he is to arrest the person."

*Morrison v. United States*, 104 U.S.App. D.C. 352, 262 F.2d 449, 452 (1958) (footnote omitted).

Accord, *Link v. Greyhound Corp.*, 288 F.Supp. 898, 901 (E.D.Mich.1968). The Court must conclude in the circumstances of this case that the defendants' arrest of the plaintiff pursuant to the authority of the warrant in question was not violative of the plaintiff's constitutional rights, and that the plaintiff can thus not recover under § 1983.

■ The Constitution requires that an arrest be supported by probable cause. In the absence of a warrant, the probable cause determination must be made by the arresting officer. But where a warrant does exist, the existence of probable cause has previously been determined by a judicial officer, and the Constitution does not require that that determination be duplicated by the officer executing the warrant. If the person named in the warrant has a defense to the offense charged, that de-

fense can in due course be presented to a judicial official. But the proper place for the arrestee to plead his cause is in court, and not to the officer whom the warrant authorizes and compels to make the arrest.

■ Plaintiff's second ground of recovery is that the arrest was effectuated with unnecessary and excessive force. From the record, it does not appear that the plaintiff suffered any injuries, other than an abrasion on his wrists from the handcuffs. For the purposes of this decision, the Court will assume, without finding, that the plaintiff was handled discourteously and that the use of handcuffs in this situation was unnecessary. The fact remains, however, that the use of such minimal force is not uncommon or unusual in the course of an arrest. For the Constitution to be violated, the force used must be excessive. While the law does not require that serious or permanent injuries result, the law does require that the force used be more than the mere technical "battery" that is inextricably a part of any arrest:

"The courts have taken cognizance of physical beatings and violence resulting in deprivations of due process. * * * Because of the brutality of the attacks in those cases, there were clear deprivations of due process. Here, however, plaintiff has neglected to allege any more than a trivial battery at best. * * * In approaching Fourteenth Amendment due process questions, the court may consider the severity of the act. While it is true that the Civil Rights Act is to be read in the context of tort liability, * * * nevertheless, the plaintiff herein has failed to show the requisite degree of harm needed to constitute a denial of rights 'implicit in the concept of ordered liberty.' * * * Many, if not most, arrests are bound to involve some touching of the person of the arrested person by the officer. It becomes a 'battery' in violation of Constitutional Rights only when excessive under the circumstances, certainly if the arrest be a lawful one."

*Daly v. Pedersen*, 278 F.Supp. 88, 94 (D.Minn.1967). (citations omitted).

In a similar manner, it has been held that mere handcuffing, without more, cannot form the basis of a complaint under § 1983. *Taylor v. McDonald*, 346 F.Supp. 390, 395 (N.D.Tex.1972).

 Granted, a minimal battery and handcuffing incident to arrest might well be offensive to the sensibilities of a responsible and law-abiding citizen. But given that the initial arrest has been determined to have been a deprivation of liberty in accordance with due process, the secondary effects of the use of minimal force incident to that arrest is not violative of the due process provision of the Fourteenth Amendment. Nor can it be said that such force amounts to cruel and unusual punishment, in violation of the Eighth Amendment rights of the plaintiff. Cf. *Anderson v. Nosser*, 438 F.2d 183 (5th Cir. 1971), modified *en banc*, 456 F.2d 835 (1972), cert. denied, 409 U.S. 848, 93 S.Ct. 53, 34 L.Ed.2d 89 (1972).

 The crux of the plaintiff's claim is really that a formal arrest and handcuffing was excessive, given that the underlying offense amounted to no more than a traffic offense. With this position, the Court is not totally unsympathetic. An arrest is a significant and substantial deprivation of a person's liberty, and it seems queer that the deprivation is essentially the same, regardless of whether the underlying offense is jaywalking or murder. As a logical matter, probable cause to believe an offense has been committed does not vary in proportion to the severity of the offense, and as a practical matter, the resulting arrest is equally intrusive. It may well be that common sense dictates that the severe and drastic process of arrest be reserved for crimes more serious than the one herein involved. But that is not the law. Indeed, in a related field the Supreme Court has recently held that a full search of the person may be conducted incident to every custodial arrest, without regard to the seriousness of the offense occasioning the arrest. See *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *Gustafson v. Florida*, 414 U.S. 260,

94 S.Ct. 488, 38 L.Ed.2d 456 (1973). A full search of the person is a serious intrusion into the privacy of the person arrested, and is substantially above and beyond the admittedly significant intrusion involved in the mere fact of arrest. In *Robinson*, the arrestee had been driving with a revoked license; in *Gustafson*, the arrestee was charged with not having his driver's license in his possession. If such minimal violations can lawfully be the occasion for a full search of the person incident to arrest, it would be anomalous for this Court to hold that such violations cannot support a simple arrest, unaccompanied by a search. Similarly, it would be anomalous to hold that a technical battery and handcuffing, which are substantially less intrusive than a full search of the person, somehow constitute excessive or unnecessary force when the contemporaneous arrest is for a simple traffic violation.

The Court accordingly holds that in the circumstances of this case, accepting as true the plaintiff's version of the disputed facts relative to the amount of force used by the defendants on February 11, 1972, the plaintiff has no right to recovery under § 1983.

 One final matter is deserving of mention. The Milwaukee Chief of Police was originally dismissed as a defendant in this case on the ground that his alleged negligence in training and supervising the arresting officers was insufficient "personal involvement" for him to be liable to the plaintiff under § 1983. (Decision and Order of July 18, 1974, at 2–3) In his affidavit in opposition to the defendants' motion for summary judgment, the plaintiff asserts that the Chief of Police was personally served with copies of the notice of damages which § 895.43, Wis.Stats. requires as a prerequisite to a tort suit against governmental officers. Plaintiff then asserts that the failure of the Chief of Police to take action on his damage claim amounts to "personal involvement." The damages plaintiff seeks are for the arrest and accompanying battery and handcuffing on February 11, 1972; the notice of damages was served on the Chief of Police on June 9,

1972. Assuming plaintiff's rights had been violated by defendants Gilbert and Kocher on the former date, it is highly questionable whether the failure of the Chief of Police to respond to the claim for damages on the latter date is independently actionable under § 1983. See *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561, 44 U.S. L.W. 4095 (1976). But it is beyond peradventure that the failure of the Chief of Police to respond on the latter date can in no way be logically related to or made a part of the actions of defendants Gilbert and Kocher on the former date. Construing this portion of the plaintiff's affidavit in opposition to the motion for summary judgment as a request to rejoin the Milwaukee Chief of Police as a defendant in this action, such request is denied.

For the aforementioned reasons,

IT IS THEREFORE ORDERED that the defendants' motion for summary judgment in favor of the defendants and against the plaintiff is granted.