Anthony Lee DANDRIDGE

v.

The POLICE DEPT. OF the CITY OF RICHMOND.

Civ. A. No. 82–0472–R.

United States District Court,
E.D. Virginia,
Richmond Division.

June 9, 1983.

Anthony Lee Dandridge pro se.

James W. Hopper, Richmond, Va., for defendant.

## OPINION

WARRINER, District Judge.

Plaintiff, proceeding *pro se* and *in forma pauperis,* filed this action under 42 U.S.C. § 1983 on 14 July 1982 and, in response to an order of this Court, filed an amended complaint on 20 July. Defendants filed an answer on 24 August and a motion for summary judgment on 9 December. Plaintiff filed a statement styled "Motion for Judgment" on 22 December and a further statement in response to defendants' motion on 26 January 1983. This matter is now ripe for consideration.

Plaintiff states that on 13 November 1981, he was being pursued by several Richmond City Police officers.

> I was apprehended on Brook Road, the Northside Section of the City of Richmond, by an officer [of this] ... department. Also this said officer was accompan[ied] by his dog. I was in a downstairs basement on the outside of an unknown residence, etc. At that time, I heard a voice stating, "Come out with your hands high above the air." At that time, I obeyed his commands and submitted myself totally into his custody etc. At that time, he the officer shouted in a loud tone of voice and commanded the other officers to come to the scene in which we were. He, the said officer's shouting statement was that, "I found him." Immediately I was surrounded by [a number] of officers. At that time, one of the officers approached me and stated, "Where is the gun." And my response in returning was, "What gun." At that time, the officers started hitting and kicking me. I was being inflicted of pain through the use of the officer's blackjack, etc. The only means of protecting myself was to cover up my head with my arms with my jacket. I was thrown on the ground and was stumped upon, etc. Finally, one of the officers handcuffed me, and stated "We should kill you out here." At that moment, I was escorted to the police wagon, upon this escortation, I noticed that the back door of the police wagon was locked. Instantly, I was struck in the mouth by one of the officers, and then he put the stick upon my "Adam-apples." I was then suffering from a lack of breathing. As the officers opened the back door of the police wagon, I was thrown in.... I can recall ... that one of the Deputy who was fingerprinting me stated to the officer [who] arrested me, that I need medical attention, etc. I was then transported to M.C.V. hospital for medical treatment. I was in great pain. I was x-rayed, I was given ice to put on my lips. The x-ray showed that I didn't have any fraction ribs. I was terribly bruised (on stomach).

Defendants have filed numerous affidavits of officers who were either involved in the arrest in question, or in the larger operation culminating in arrest, or who were present when plaintiff was taken to the juvenile division at the police headquarters. In these affidavits, various officers aver

that plaintiff was not hit or kicked or struck by any police officer, *see, e.g.,* affidavit of Wayne E. Fitchett, and that when plaintiff arrived at headquarters, he showed no lacerations, bruises, or any other evidence of injury. *See, e.g.,* affidavit of Malachi N. Walker. William L. Condrey, Jr., avers further that when plaintiff arrived at headquarters, he Condrey, photographed plaintiff and that plaintiff evidenced no bruises and did not complain of any injury whatsoever. In summary, defendants argue that:

> At the time of the arrest, plaintiff was a potentially dangerous person. At the time of the alleged incident, Dandridge was crouched down in a dark basement doorway. He had run and hidden from the police as best he could after committing a robbery in which he used a handgun, and he was presumed to be in possession of the weapon. There was not enough space by the basement door to handcuff plaintiff in the small area where plaintiff was crouched. He was screaming wildly and would not come up from his crouched position when approached by the defendants herein. Moreover, he had been described previously that evening as [a] 6'1" male.

Defendants also argue that there is no impartial indication of injury to plaintiff from any alleged excessive use of force against him. They state that the Medical College of Virginia Emergency Record dated 13 November 1981 noted that the trauma observed in plaintiff's condition was "not significant." The x-ray report of plaintiff's left ribs indicated "there is no fracture." In an affidavit, Nan F. Dean, Medical Administrator at the Richmond City Jail, states that an entry made in plaintiff's medical file dated 13 November 1981 by a physician's assistant, noted that plaintiff had complained of left flank pain but that there were no evident injuries.

The Court of Appeals for the Fourth Circuit has ruled that an unauthorized striking by a State officer makes out a claim of constitutional deprivation. For reasons developed herein, this Court is concerned that this ruling is at odds with Supreme Court precedent and further that no workable standard has been provided to determine either whether a claim of battery by police requires an evidentiary hearing or, and most important to a trial judge, if a hearing is held, whether a constitutional violation has been proven. Proposing respectfully a basis for distinguishing between a tort and a constitutional violation, the Court concludes that no constitutional violation has been made out in this case.

## I.

As the Supreme Court said in *Screws v. United States,* 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945), "the fact that a prisoner is assaulted, injured, or even murdered by state officials does not necessarily mean that he is deprived of any right secured by the Constitution or laws of the United States." *Id.* at 108, 65 S.Ct. at 1038; *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Paul v. Davis,* 424 U.S. 693, 699–700, 96 S.Ct. 1155, 1159–1160, 47 L.Ed.2d 405 (1976). Justice Douglas, writing for the Court in *Screws,* asserted that the criminal code involved in that case[1] did not make all tortious deprivations under color of State law into federal crimes; it brought within the statute "only specified acts done 'under color' of law and then only those acts which deprived a person of some right secured by the Constitution or laws of the United States." *Id.* 325 U.S. at 109, 65 S.Ct. at 1039. *See also Baker v. McCollan,* 443 U.S. 137, 145, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979); *Martinez v. California,* 444 U.S. 277, 284, 100 S.Ct. 553, 558, 62 L.Ed.2d 481 (1980); *Polite v. Diehl,* 507 F.2d 119, 127–140 (3rd Cir.1974) (Kalodner, J.) (concurring and dissenting); *Hall v. Tawney,* 621 F.2d 607, 613 (4th Cir.1980); *King v. Blankenship,* 636 F.2d 70, 73 (4th Cir.1980).

In a recent line of cases, the Supreme Court has insisted on a showing that State

---

1. *Screws* treated 18 U.S.C. § 242, which is the criminal counterpart of 42 U.S.C. § 1983. *See Parratt v. Taylor,* 451 U.S. at 535, 101 S.Ct. at 1912.

action challenged under § 1983 "deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–1913, 68 L.Ed.2d 420 (1981). Thus, in *Paul v. Davis, supra,* the Supreme Court sought to determine what constitutional right might have been deprived by an alleged defamation committed by State police officers. The Court stated that:

> [The plaintiff] has pointed to no specific constitutional guarantee safeguarding the interest he asserts has been invaded.
>
> Rather, he apparently believes that the Fourteenth Amendment's Due Process Clause should ex proprio vigore extend to him a right to be free of injury wherever the State may be characterized as the tortfeasor. But such a reading would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States.

*Id.* 424 U.S. at 701, 96 S.Ct. at 1160; *see also Baker v. McCollan, supra,* 443 U.S. at 145, 99 S.Ct. at 2695.[2]

In a case addressing the constitutional implications of allegations of unjustified physical punishment, the Supreme Court inquired first whether a constitutional right was implicated at all and, if so, what protection was required. In *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977), the trial court had granted a motion to dismiss the constitutional claims of public school children who had sustained injury as a result of disciplinary paddling. The Court concluded that

corporal punishment of school children was not encompassed in the Eighth Amendment's prohibition against cruel and unusual punishment, noting that such punishment was consonant with traditional common law concepts and traditional societal attitudes, *id.* at 659, 97 S.Ct. at 1406, and pointing out that this prohibition was specifically addressed to the treatment of convicted criminals. *Id.* at 664, 97 S.Ct. at 1408.

The Supreme Court found, however, that corporal punishment of public school children did implicate the Fourteenth Amendment's prohibition of deprivations of liberty without due process:

> While the contours of this historic liberty in the context of our federal system of government have not been defined precisely [footnote omitted], they always have been thought to encompass freedom from bodily restraint and punishment. *See Rochin v. California,* 342 U.S. 165 [72 S.Ct. 205, 96 L.Ed. 183] [citations omitted] (1952). It is fundamental that the state cannot hold and physically punish an individual except in accordance with due process of law.

*Id.* at 673–674, 97 S.Ct. at 1413–1414.

Looking to the nature of the interest implicated, the risk of erroneous disciplinary decisions, and the value of adding safeguards, the Court concluded that due process did not require notice and hearing before corporal punishment, *Id.* at 682, 97 S.Ct. at 1418, and that due process could be

2. The Supreme Court's requirement that a specific constitutional right be identified to support an action under § 1983 presupposes a limited number of identified, enumerated constitutional rights. Thus, the Court reversed a finding by the appeals court that the Fourteenth Amendment guarantee against the deprivation without due process of life, liberty, or property included protection against a defamation by State officers, *Paul v. Davis, supra,* a deprivation which presumably implicates the right to enjoyment of liberty. It also ruled that the Fourteenth Amendment did not create a constitutional right of action for false arrest, *Baker v. McCollan, supra,* though this tort clearly implicates the Fourteenth Amendment right to liberty. Indeed, the Court has stated that "even if a state decision does deprive an individual of life or property, and even if the decision is erroneous, it does not follow that the decision violated that individual's right to due process." *Martinez v. California, supra,* 444 U.S. at 284, n. 9, 100 S.Ct. at 558–559, n. 9. *See also, Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). This Court understands the body of constitutional rights of action to comprise rights enumerated in the Bill of Rights or related rights identified by the Supreme Court.

vindicated by State post-deprivation remedies.[3]

## II.

The Fourth Circuit Court of Appeals recently considered the constitutional implications of the disciplinary spanking of a schoolchild by a teacher. *Hall v. Tawney,* 621 F.2d 607 (4th Cir.1980). Addressing issues raised in *Ingraham v. Wright, supra,* the Court overturned the District Court's Rule 12(b)(6) dismissal on the authority of *Ingraham* and remanded for consideration of the "substantive due process" implications of such punishment. The Court severely limited the reach of *Ingraham v. Wright.* The Fourth Circuit reasoned that such corporal punishment might give rise to an independent federal cause of action to vindicate *substantive* rights under the Due Process Clause, while the Supreme Court in *Ingraham* had decided only that State post-deprivation tort remedies provided adequate *procedural* process to foreclose a claim of constitutional deprivation without due process. *Id.* at 610–611. The Court of Appeals went on to identify a substantive due process guarantee implicated in such corporal punishment, citing cases following *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), which has been interpreted as having developed a theory that a constitutional claim may be stated on the basis of conduct that "shocks the conscience." *Hall v. Tawney,* at 612–613.[4] The Court of Appeals stated that a State tort claim might well turn on the mere infliction of undue physical punishment, but that determination of the substantive due process protection was of a different order:

> As in the cognate police brutality cases, the substantive due process inquiry in school corporal punishment cases must be whether the force applied caused injury so severe, or so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.

*Id.* at 613, *citing Johnson v. Glick,* 481 F.2d 1028, 1033 (2nd Cir.1973).

The Court of Appeals has similarly held in the context of a prisoner's allegation of an unauthorized striking by a guard that summary judgment should not be entered before a trial court has determined the extent to which excessive force was employed without just cause. *King v. Blankenship,* 636 F.2d 70, 73 (4th Cir.1980); *Cooper v. Baines,* 691 F.2d 493 (4th Cir.1982) (unpublished); *Grier v. Keever,* 694 F.2d 716 (4th Cir.1982) (unpublished); *Lew v. Hutto,* 691 F.2d 492 (4th Cir.1982) (unpublished); *Carr v. Jordan,* 707 F.2d 505 (4th Cir.1983) (unpublished).

The Fourth Circuit was not writing on a clean slate in either *Hall* or *King;* numerous courts have found that the use of excessive force may state a constitutional claim. Judicial analysis of the support in the Constitution or Supreme Court cases for such a view of the law is, however, very limited and far from conclusive. In outline, there are cases in which the lower courts have reasoned that a constitutional claim is presented because the behavior of police was beyond the pale of decency and thus amounted to cruel and unusual punishment. *E.g., Howell v. Cataldi,* 464 F.2d 272 (3rd Cir.1972). *See Bur v. Gilbert,* 415 F.Supp. 335 (E.D.Wis.1976). A similar case has held that the privileges and immunities clause of the Fourteenth Amendment guarantees freedom from punishment outside that meted out by a court, thus proscribing a striking by police. *Samuel v. Busnuck,* 423 F.Supp. 99, 101 (D.Md.1976). Another court has held that due process includes not only

---

3. *See Parratt v. Taylor, supra.* Even where plaintiff had shown a deprivation of property by State officers, a violation of a specific constitutional guarantee, the Court held that adequate post-deprivation State remedies provided all the process due plaintiff. *Id.* 451 U.S. at 538–544, 101 S.Ct. at 1914–1917.

4. *Rochin,* of course, was not itself concerned with substantive due process but rather the admissibility of evidence in a criminal case obtained by the State through use of a stomach pump on defendant. 342 U.S. at 173, 72 S.Ct. at 210.

the right to a fair trial but a protection from unreasonable, unnecessary, and unprovoked uses of force. *Courtney v. Reeves,* 635 F.2d 326, 329 (5th Cir.1981), citing *United States v. Stokes,* 506 F.2d 771 (5th Cir. 1975). And still another court has stated that the right to life is fundamental and is protected against unreasonable takings without due process by the Fifth and Fourteenth Amendments. *Landrum v. Moats,* 576 F.2d 1320, 1325 (8th Cir.1978), *cert. denied,* 439 U.S. 912, 99 S.Ct. 282, 58 L.Ed.2d 258. *See Hausman v. Tredinnick,* 432 F.Supp. 1160 (E.D.Pa.1977) (citing constitutional guarantee against unreasonable interference by State officers); *Jenkins v. Averett,* 424 F.2d 1228 (4th Cir.1970).

A different group of cases cites *Johnson v. Glick,* 481 F.2d 1028 (2nd Cir.1973), as does the Fourth Circuit, for the proposition that an unjustified use of excessive force makes out a constitutional deprivation. *Hamilton v. Chaffin,* 506 F.2d 904 (5th Cir. 1975) and cases cited therein; *Roberts v. Marino,* 656 F.2d 1112 (5th Cir.1981); *Bur v. Gilbert, supra; Bellows v. Dainack,* 555 F.2d 1105, 1106 (2nd Cir.1977). These latter cases, though in fact making no reference to constitutional authority, are presumably based on the invocation in *Johnson v. Glick* of the shock-the-conscience standard. They rely on the criteria listed in *Johnson* for determining when a constitutional claim is stated.

In a learned and thorough opinion in *Polite v. Diehl,* 507 F.2d 119, 124–143 (3rd Cir.1974) (concurring and dissenting), Judge Kalodner shows that the putative grounds proposed for finding that an unjustified striking makes out a constitutional claim are without support in the Constitution or in decisions of the United States Supreme Court. He notes that the confusion between State torts and constitutional claims has been largely occasioned by the statement in *Monroe v. Pape,* 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961), that § 1983 should be read against the background of tort liability. This statement was, however, made in the context of the holding that a warrantless search of a home violated the Fourth Amendment proscrip-

tion of unreasonable searches and seizures, thereby violating the Fourteenth Amendment's Due Process Clause. Thus, while *Monroe* held that § 1983 does not require specific intent, it did so in the context of a finding that challenged action by police implicated a specific, listed, explicit constitutional right set forth in the Bill of Rights.

Judge Kalodner notes further that the privileges and immunities clause of the Fourteenth Amendment does not support the claim that an unjustified striking is a constitutional deprivation because that clause concerns only rights and privileges "incident to citizenship of the United States, but does not include rights pertaining to state citizenship and derived solely from the relationship of the citizen and his state established by state law." *Snowden v. Hughes,* 321 U.S. 1, 6–7, 64 S.Ct. 397, 400, 88 L.Ed. 497 (1944), citing *The Slaughter-House Cases,* 83 U.S. (16 Wall.) 36, 21 L.Ed. 394 (1873).

The "equal protection of the laws" clause of the Fourteenth Amendment simply "goes no further than the invidious discrimination." *Williamson v. Lee Optical Co.,* 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955); *Snowden v. Hughes, supra,* 321 U.S. at 8, 64 S.Ct. at 401.

Judge Kalodner notes that courts in construing the due process clause of the Fourteenth Amendment "have the authority to take into account only those fundamental rights which are expressed in that provision," *see Polite v. Diehl, supra,* at 139, citing *Twining v. New Jersey,* 211 U.S. 78, 107, 29 S.Ct. 14, 22, 53 L.Ed. 97 (1908), and "it was not intended by the Fourteenth Amendment and the Civil Rights Acts that all matters formerly within the cognizance of the States should become matters of national concern." *Snowden v. Hughes, supra,* 321 U.S. at 9, 64 S.Ct. at 401. The due process significance of allegations of an unjustified striking are discussed further *infra.*

## III.

Since the Fourth Circuit specifically considered *Ingraham* and purported to distin-

guish it in deciding *Hall,* this Court is bound to apply in a given case the law as discerned in *Hall.*[5] The Court must conclude, however, that the standard proposed in *Hall* for determining when a tortious battery crosses the constitutional threshold, *id.* at 613; quoted *supra* at 156, is of little practical use in this case to the extent that it looks to the severity of corporal punishment and the justification for its infliction or, indeed, to the amount of force used in effecting an arrest and the justification for that force. In view of the statement in *Screws, supra,* that even an allegation of murder committed by State officials would not necessarily make out a constitutional claim, it is clear that the degree of force used cannot be dispositive. *See Hall v. Tawney,* at 610; *but see Cooper v. Baines,* 691 F.2d 493 (4th Cir.1982) (unpublished) ("at issue is the amount of force used by defendants"). Likewise, looking to the justification for the force used provides no standard for determining when the constitutional line has been crossed. If the force used is justified, no State tort can be made out. If, on the other hand, the force is not justified, a State right of action is apparent. Neither *Hall v. Tawney* nor *King v. Blankenship* provide any rationale to guide the Court in making these factual determinations of when the line is crossed on a case-by-case basis. *See Sellers v. Roper,* 554 F.Supp. 202 (E.D.Va.1982).

To prohibit trial courts from dismissing any complaints of unjustified or excessive force presents a further fundamental problem. A motion to dismiss goes to the very jurisdiction of the trial court. Consequently, a Rule 12 motion to dismiss because the trial court does not have jurisdiction to entertain the claim should be ruled on immediately, before the time and expense of a trial are expended by the parties and the court. The Court of Appeals' disapproval of such motions in *Hall* would require courts to deny such a motion and proceed with the case to develop and reach the merits before the jurisdictional claim can be addressed. While this is oftentimes necessary, it is not at all times necessary. *Hall* appears to brook no exception.

*Hall* also disapproves, without exception, the grant of summary judgment when the complaint alleges unjustified force. Such a requirement of a hearing on every allegation of excessive or unjustified force surely could not be what the Court of Appeals intended. An assertion by a 260-pound mugger six and one-half feet tall already convicted of resisting arrest and of assaulting and battering the arresting officer surely does not deserve a hearing to determine whether during his arrest by the battered five-foot seven, 150-pound officer, the mugger's arm was unconstitutionally twisted.[6]

More to the point, this Court has no jurisdiction over such a claim since plaintiff could not conceivably prove facts, under that complaint, entitling him to prevail on a claim of constitutional deprivation; a motion to dismiss would have to be granted. The standard for granting a motion for summary judgment is considerably lower than that for granting a motion to dismiss, *see* Rules 12(b)(6) and 8(e), Fed.R.Civ.P.; *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A motion for summary judgment should readily be granted on the foregoing facts, notwithstanding plaintiff's truthful affidavit that his arm had been twisted.[7]

---

5. In all honesty, and with deference, I cannot distinguish *Hall* from *Ingraham* on the facts, and absent the intervening *Hall* decision, I would have considered *Ingraham* controlling and binding precedent.

6. The Court of Appeals states that "not every violation of state tort and criminal assault laws will be a violation of this [substantive] constitutional right, but some of course may." *Id.* 621 F.2d at 613. Taken at face value however, *Hall* requires that every allegation of unjustified

force would have to be heard *ore tenus* to apply the problematic standard discussed, *supra. See Polite v. Diehl,* 507 F.2d at 124 (Kalodner, J., concurring and dissenting): "is infliction of a black eye a 'federal case'?"

7. The motion for summary judgment should be granted, that is, unless § 1983 is indeed to "become a font of federal tort law." *Paul v. Davis, supra,* 424 U.S. at 701, 96 S.Ct. at 1160.

The Court of Appeals fails to consider the adequacy of State common law and statutory remedies as directed by the Supreme Court in cases of other common law torts presented as constitutional violations. *See, e.g., Parratt v. Taylor, Estelle v. Gamble, Paul v. Davis, Ingraham v. Wright, Baker v. McCollan.* The Supreme Court's precept that § 1983 is not to be a font of tort law [8] is meaningless unless courts recognize the limits on their jurisdiction. The existence of jurisdiction cannot depend on whether a trial judge has his conscience shocked or not, literally.

As noted, the Fourth Circuit's standard for differentiating between State torts and constitutional deprivations is based largely on the justification for and degree of force of a striking by a State officer, *see Hall v. Tawney,* and *King v. Blankenship.* As previously noted, for the trial judge (and juries), this provides no practical guidance in resolving claims of batteries by State officers. The Courts of Appeals have, contrary to the command of the Supreme Court, created a font of tort law permitting any physical unpleasantness occasioned by State officers to make out a triable potential constitutional claim, and this is so whether or not a specific constitutional right is implicated by the State action.

However the lack of a practical standard for treating federal court allegations of a police or prison (or teacher) striking has a deeper root: the Supreme Court itself has yet to provide a satisfactory standard for determining what torts may make out a constitutional claim. *Estelle v. Gamble, supra,* held, in effect, that the amputation of a prisoner's right arm due to a State-employed doctor's negligence does not state a constitutional claim. *Parratt,* however, decided that if the same doctor negligently deprived the same prisoner of his shoe lace, or at least of his shoes, then the United States Constitution has been violated. The deprivation by State officers of what might be a man's most valued possession, namely his good name and reputation, does not make out a constitutional claim, *Paul v. Davis, supra,* but, again, the paddling of a prepubescent fanny well might. *Ingraham v. Wright.*[9]

Neither judges nor lawyers know what to do or where to look for guiding lights in this miasmal fog. Given the confusion at all levels of this law, a jury would be helpless [10] in making the decision of whether a striking merits a constitutional remedy. They would have to decide whether a constitutional claim was stated on the basis of a twinge in their viscera. There is no rule of law for a conscientious judge to apply in deciding either this case or the next unauthorized striking case that comes along.

## IV.

This Court is very sensitive to its special role in applying the law as handed down by Congress, the Supreme Court, the Courts of Appeals. It is the duty of this Court to follow the law rather than make law. As a means of deciding the case before it, however, this Court must have recourse to a means of making the required differentiation between torts and constitutional deprivations that is comprehensible, that reserves § 1983 to actual constitutional deprivations, *Paul v. Davis* (§ 1983 is not to be a font of tort law), and that recognizes State courts as the primary forum for the protection of aggrieved plaintiffs from intentional or negligent torts whether the tortfeasor be a State employee or private citizen. *Par-*

**8.** *See also Johnson v. Glick,* 481 F.2d at 1030: "The constitutional protection is nowhere nearly so extensive as that afforded by the common law tort action...." *Id.* at 1033.

**9.** As if acknowledging a lack of consistency in this area, the Supreme Court stated that the question of whether simple negligence is sufficient to make out a cause of action under 42 U.S.C. § 1983 "may well not be susceptible of a uniform answer across the entire spectrum of conceivable constitutional violations which might be the subject of a § 1983 action." *Baker v. McCollan,* 443 U.S. at 139–140, 99 S.Ct. at 2692–2693; *Parratt v. Taylor,* 451 U.S. at 534, 101 S.Ct. at 1912. The Court did not identify the concrete basis for this suspicion.

**10.** Not to mention the helplessness of the trial judge as he attempts to instruct the jury on the law in this field.

ratt v. Taylor; Baker v. McCollan; Ingraham v. Wright. The Court does so not with the aim of making law or theorizing but in the hope of deciding this and like cases by a clear standard consistent with the Constitution and Supreme Court cases.

The Court must conclude that intent to violate a specific constitutional right, or knowledge that the natural consequence of an act will infringe a specific constitutional right, is the proper litmus test for identifying the tort that makes out a constitutional claim. Addressing physical violence committed by a State officer, Screws stated that "the fact that a prisoner is assaulted, injured or even murdered by state officials does not necessarily mean that he is deprived of any rights secured by the Constitution...." Supra, 325 U.S. at 108, 65 S.Ct. at 1039. Thus, a battery or other tort by a State officer does not make out a constitutional violation unless it infringes a specific constitutional right. A battery by a State officer can only infringe a specific constitutional right if the officer intended to infringe that right through the battery or could reasonably have foreseen that infringement would be the result. This is also the significance of the statement in Monroe v. Pape that § 1983 "should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions," 365 U.S. at 187, 81 S.Ct. at 484: an invasion of a home, search without a warrant, and arrest without warrant or arraignment, id. at 170, 81 S.Ct. at 475, constitute a Fourth Amendment violation because, as the natural and foreseeable consequence of an unreasonable search, they implicate a specific constitutional guarantee.[11]

Under Screws, a guard's beating of a prisoner, standing alone, does not state a constitutional claim, be it ever so severe or excessive. However, if that guard were merely to slap a prisoner for seeking to file a tort action against the guard, that touching would state a violation of the prisoner's constitutionally protected right to a redress of grievances. Similarly, a prison guard who, taking custody of a prisoner's television set when a prisoner is remanded to segregation, accidentally drops the television set, has not, pace Parratt,[12] violated any established constitutional rights. On the other hand, if the T.V. set was deliberately dropped so as to punish the prisoner for talking back to the guard, such punishment may be constitutionally actionable under the Due Process Clause of the Fourteenth Amendment.

Again, a police officer does not violate a citizen's constitutional rights for accidentally running into him on the street, see Paul v. Davis, 424 U.S. at 698, 96 S.Ct. at 1159; Parratt v. Taylor, 451 U.S. at 544, 101 S.Ct. at 1917, unless that police officer was trying to prevent the citizen from arriving at the polls to vote. If the officer was trying to hinder the person in voting, his mere verbal intimidation of the citizen might well state a constitutional claim. If the officer accidentally ran into a march of peaceful protesters, mangling and killing several, his careless driving alone would amount to no more than a State tort. See Parratt v. Taylor, 451 U.S. at 544–545, 101 S.Ct. at 1917–1918 (Stewart, J., concurring). If, however, he swerved to frighten the protestors, of whom he disapproved, his accidental bruising of even one makes out a First Amendment violation under § 1983, being the natural result of an unconstitutional intent. Defamation of a citizen under color of State law likewise would not

11. The Supreme Court has indicated that intent is to be considered in judging a claimed violation of statutory or constitutional rights. Baker v. McCollan, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) (in a claim that a false arrest due to mistaken identity violated due process, the Court stated that "the state of mind of the defendant may be relevant on the issue of whether a constitutional violation has occurred in the first place." Id. at 140, n. 1, 99

S.Ct. at 2692, n. 1); United States v. Lovasco, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977) (in determining whether pre-indictment prosecutorial delay violates due process, a Court must consider the reasons for the delay as well as the prejudice to the accused. Id. at 790, 97 S.Ct. at 2048).

12. See, infra, note 10.

state a constitutional claim unless that defamation was, say, intended as coercion of the citizen's exercise of a specific constitutional right. The intent required is not the specific intent necessitated by the criminal statute, 42 U.S.C. § 242, dealt with in *Screws.* The touchstone is merely a general intent to infringe the exercise of a specific constitutional right. The actual deprivation may be a step removed, namely the natural consequence of an intentional action.

It should be noted that the standard, proposed in *Johnson v. Glick* and advocated by the Fourth Circuit in *Hall v. Tawney* and *King v. Blankenship,* for determining when a battery by a State officer crosses a constitutional line may be distilled to a question of intent. When the standard is stripped of questions of whether the blow was "so excessive" or "unjustified", the criteria centers on language asking whether the officer's action was "so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power...." *Hall v. Tawney* at 613. The contrast between malice on the one hand and zeal on the other is, in essence, a question of intent.

 The question of intent is readily comprehensible to judges, lawyers, and juries. The requisite factual inquiry to answer the question has been well-defined in the context of the law of qualified immunity.[13] To establish that a defendant acted with intent to infringe a constitutional right, the plaintiff must first allege these facts and survive defendant's motion for summary judgment on the issues. If the acts were committed, the defendant bears the burden of showing that they were not committed with intent to infringe upon a constitutional right. A bald assertion to this effect is not sufficient; defendant must present competent summary judgment materials, which if uncontroverted, would establish that the acts were not committed with an unconstitutional intent. Once the defendant has made this *prima facie* showing, plaintiff has the opportunity and burden of establishing that defendant was actuated by the impermissible intent. *See Harlow v. Fitzgerald,* —— U.S. ——, ——, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982); *Barker v. Norman,* 651 F.2d 1107, 1125–1127 (5th Cir.1981); *McCray v. Burrell,* 516 F.2d 357, 371 (4th Cir.1975).

Applying this litmus test in the case at hand, the Court does not reach the question of intent. The plaintiff has not identified any constitutional right infringed by the allegedly excessive force used in effecting his arrest, nor is the Court able to discern that any enumerated or recognized due process guarantee is implicated in plaintiff's challenge to his arrest.[14] Accordingly, summary judgment should be granted to defendants.

And it is so ORDERED.

---

13. Requiring that intent to violate a specific constitutional right be shown to make a tort into a constitutional violation runs counter to the finding in *Parratt v. Taylor* that the negligent misplacing of a hobby kit makes out a constitutional claim, though such a deprivation does implicate an enumerated constitutional right, namely to property. *See Parratt,* 451 U.S. at 546, 101 S.Ct. at 1918 (Powell, J., concurring in the result: unintentional acts do not state a constitutional claim). Similarly, the finding in *Ingraham v. Wright* that the disciplinary paddling of a schoolchild without more implicated a constitutional liberty interest apparently conflicts with a requirement of intent. But the result in *Parratt* and *Ingraham* would be unaffected by applying an intent criterion in cases where a remedy satisfying due process is available. The Supreme Court's conclusion that a negligent deprivation of property and the paddling of a schoolchild do not make out constitutional violations arrives at the practical conclusion that such an allegation, without more, does not make out a constitutional claim cognizable in federal courts. The result would be the same under the standard of intent.

14. *See* n. 2, *supra, Meachum v. Fano, supra,* 427 U.S. at 224, 96 S.Ct. at 2538 (rejecting view that any grievous loss visited upon person by State implicates procedural safeguards under Fourteenth Amendment); *Martinez v. California, supra,* 444 U.S. at 284, n. 9, 100 S.Ct. at 558–559, n. 9.