**Nieta BROOKS, etc.**

v.

**SCHOOL BOARD OF the CITY OF RICHMOND, VIRGINIA, et al.**

**Civ. A. No. 83–0361–R.**

United States District Court, E.D. Virginia, Richmond Division.

Sept. 8, 1983.

---

Saad El-Amin, Richmond, Va., for plaintiff.

G. Kenneth Miller, James C. Shannon, May, Miller & Parsons, Henry M. Massie, Jr., Sands, Anderson, Marks & Miller, Richard R. Ryder, Richmond, Va., for defendants.

## OPINION AND ORDER

WARRINER, District Judge.

Presently before the Court is defendant Veronica Corpening's ripe Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief can be granted.

Plaintiff seeks money damages under 42 U.S.C. § 1983 and the common law of Virginia. She alleges a deprivation of her Fourteenth Amendment substantive due process right to be free from physical intrusions upon her person. She further adverts to an intrusion upon her liberty interest in avoiding punishment while in the care of school authorities. Plaintiff claimed this violation of her rights occurred when her teacher, defendant Corpening, allegedly disciplined plaintiff by piercing her upper left arm with a straight pin. Plaintiff alleges physical injury and psychological consequences, both of which required medical care.

In her motion to dismiss, defendant argues that under *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977), while the use of corporal punishment in the schools *does* implicate a constitutionally protected liberty interest, the traditional common law remedies are fully adequate to afford the process due. Defendant therefore claims that even assuming all facts are as plaintiff alleges, these facts do not make out a claim cognizable under 42 U.S.C. § 1983. As to the Virginia common law, defendant notes this claim also may be litigated in the courts of the Commonwealth.

Plaintiff, in response, calls the Court's attention to *Hall v. Tawney,* 621 F.2d 607 (4th Cir.1980). *Ingraham* and *Hall* are not distinguishable on their facts, but where the Supreme Court in *Ingraham* addressed denial of procedural due process, the Fourth Circuit in *Hall* looked at a possible deprivation of substantive due process and found:

[T]he existence of this right to bodily security—the most fundamental aspect of

personal privacy—is unmistakably established in our constitutional decisions as an attribute of the ordered liberty that is the concern of substantive due process. Clearly recognized in persons charged with or suspected of crime and in the custody of police officers, we simply do not see how we can fail also to recognize it in public school children under the disciplinary control of public school teachers. . . . As in the cognate police brutality cases the substantive due process inquiry in school corporal punishment cases must be whether the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.

*Hall,* at 613.

There being no procedural due process issue in light of *Ingraham* the issue presented to this Court by defendant's motion to dismiss is simply: was defendant Corpening's conduct in disciplining plaintiff Brooks so disproportionate, so malicious, so sadistic, as to rise to the deprivation of a constitutionally protected right? Though the question is simple, the answer is complex. Our granting of defendant's motion to dismiss rests on three interrelated lines of reasoning which are explained below.

### I

■ Plaintiff relies on *Hall* for two propositions: First, that the corporal punishment of a school child by her teacher is inherently a potential deprivation of substantive due process, and second, that a motion to dismiss cannot lie in such cases since only a full evidentiary hearing can reveal whether defendant's conduct is so malicious, so disproportionate to the offense, so brutal and inhumane, that a con-

stitutional tort has occurred. With the first of these we cannot, in light of *Hall,* quarrel; the language of the Fourth Circuit gives no interpretive leeway in this regard. With the second, we must disagree. Regardless of how much a trial flesh out the bare bones skeleton, this incident, in and of itself, simply cannot descend to the level of a brutal and inhumane, conscience-shocking, episode that the Fourth Circuit requires. As defendant aptly notes in her reply memorandum, allegations of twenty licks with a two-foot-long paddle causing a severe hematoma and loss of the use of an arm for a week did not shock the conscience of the United States Supreme Court in *Ingraham.* Neither did allegations of defamation. *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Surely the defamation of one's good name is a more shocking event than being stuck with a pin.[1] If the pen is mightier than the sword, it must be mightier than a pin.

Medical malpractice did not shock the conscience of the Supreme Court (*Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)); nor did false imprisonment (*Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). *Reply Memorandum of Defendant* at 2. In *Hall,* the conduct complained of was a beating so severe that plaintiff was hospitalized. Given the Fourth Circuit's holding that the punishing of school children can fit the parameters of a deprivation of substantive due process, it is understandable that the Court insisted on a trial of the matter. Here, plaintiff has sustained no such excessive trauma—physical or mental. She at most suffered a minor injury: a simple straight pin, jabbed through several layers of clothing, cannot equate to beatings and massive bruisings. Thus, defendant's motion to dismiss must be granted, even under plaintiff's reading of *Hall.* There are no facts alleged sufficient to even suggest a substantive due process claim.

1. Indeed most persons are with some degree of frequency jabbed in the arm or the hip with a needle by physicians or nurses. While it is uncommon for a teacher to do the jabbing, *being* jabbed is commonplace.

## II

Having said this much, we are impelled to consider the *Hall*-type deprivation of substantive due process in the light of the recent Fourth Circuit holding in *Daniels v. Williams,* (1983). Plaintiff in *Daniels* was an inmate at the Richmond City Jail who brought a § 1983 action against Deputy Sheriff Williams, alleging he was injured when he slipped and fell on a pillow Williams had negligently left on the stairs. Perceiving a constitutionally protected liberty interest, and following *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the Fourth Circuit found, however, adequate procedural safeguards in Virginia's common law of torts to defeat plaintiff's claim that he had been deprived of liberty without due process of law. In a lengthy footnote, Judge Turk, in dictum, also addressed the inapplicability of *Parratt* to deprivations of "substantive due process:"

> Similarly, *Parratt* would not apply to substantive due process violations resulting from a police officer's unjustified, brutal beating of a suspect, *see Henderson v. Counts,* 544 F.Supp. [149] at 152–153, or grossly negligent shooting of a suspect which amounts to a 'raw abuse of power.' *Jenkins v. Averett,* 424 F.2d 1228, 1232 (4th Cir.1970). In these kinds of cases involving alleged violations of substantive constitutional rights, therefore, the presence or absence of a State remedy is irrelevant to whether a claim is stated under Section 1983. Consequently, before dismissing a Section 1983 action under *Parratt,* a court should scrutinize the complaint to insure that it does not include allegations of violations of substantive constitutional rights in addition to an allegation of procedural due process violation.

*Daniels,* at ——, fn. 3.

Such a reading of the law places the courts squarely in the posture feared by Justice Powell in *Parratt.* In his concurrence he criticized the majority's focus on the adequacy of State post-deprivation remedies as the touchstone to its decision. He further dealt with the problem presented by the *Daniels* footnote quoted above and by the instant case. Citing *Screws v. United States,* 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945) and quoting from it in note 10 of his dissent, Justice Powell emphasized the essential ingredient of a constitutional *deprivation* to lift an ordinary tort to the constitutional level. Justice Powell expressed his fear, fully appreciated by me, that the free-form approach will lead to the oft-mentioned "font of tort law." The *Daniels* footnote would have trial courts *seeking* the font rather than avoiding it as *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976) admonished us.

## III

The Court will advert to two recent decisions of its own to help delineate the dilemma. In *Sellers v. Roper,* 554 F.Supp. 202 (E.D.Va.1982), the plaintiff claimed that the defendant guard grabbed plaintiff, forced him to bend over, and elbowed him in the back. This Court lamented that there exists no clearly discernable means of determining whether or not such activity, or indeed any such use of physical force violates the Constitution, nothing more appearing.[2] Lacking such guidance, this Court held that "an allegation of unjustified striking alone, without a factual allegation of, for instance, a striking affecting other substantive constitutional rights of a plaintiff, simply does not state a constitutional claim." *Sellers,* at 206.

Similarly in *Dandridge v. Police Department of the City of Richmond,* 566 F.Supp. 152 (E.D.Va.1983), this Court considered the § 1983 claim of a plaintiff who alleged himself the victim of police brutality when hit,

---

**2.** Whether an individual who sits as a judge happens to be "literally shocked" is not a clearly discernable means. It is constitutional law by lottery—it depends on which judge was assigned to hear the case. See *Hall v. Tawney, supra,* 621 F.2d at 613.

kicked, and beaten by an arresting officer. Again, I noted there exists no workable standard to determine whether a claim of battery by police amounts to a constitutional violation. I further remarked that since the Fourth Circuit specifically considered *Ingraham* and purported to distinguish it in deciding *Hall,* this Court must apply the law as discerned in *Hall.* The Court concluded, however, that the standard proposed in *Hall* for determining whether a tortious battery crosses the constitutional threshold is of little practical use to the extent that it looks to the severity of corporal punishment and the justification for its infliction.

■ The reasoning in *Sellers* and *Dandridge* could well apply to the instant situation. As in those cases I am constrained to hold that neither the amount of force used nor the justification for the force applied provides a standard for determining when the constitutional line has been crossed. The Court again must fall back on the reasoning of the Supreme Court in *Screws v. United States,* 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1944). The Supreme Court stated that a battery or other tort by a State officer does not make out a constitutional violation unless it deprives the victim of a right "protected or secured by the Constitution." *Screws,* at 108, 65 S.Ct. at 1038. As this Court held in *Dandridge,* a battery by a State officer can infringe a specific constitutional right only when the officer intended to abridge that right by means of the battery or when he could reasonably have seen that such infringement would be the result. *Dandridge,* 566 F.Supp. at 160. The *sine qua non,* therefore, of a constitutional tort is defendant's "general intent to infringe the exercise of a specific constitutional right." *Dandridge,* at 161. Thus, to prevail, plaintiff Brooks must allege and prove not only that defendant Corpening did indeed stick her with a pin but that she did so in order to deprive her of some independently protected constitutional right. As the court reasoned in *Dandridge,*

Under *Screws,* a guard's beating a prisoner, standing alone, does not state a constitutional claim, be it ever so severe or excessive. However, if that guard were merely to slap a prisoner for seeking to file a tort action against the guard, that touching would state a violation of the prisoner's constitutionally protected right to a redress of grievances.

*Dandridge,* at 160.

■ In her complaint, plaintiff has not specifically alleged that defendant had any such intent to deprive her of such a constitutional right; instead she relies on *Hall* for the blanket proposition that violation of substantive due process rights cannot properly be determined upon a motion to dismiss. The lack of development of a record, plaintiff argues, beyond the mere allegations and denials of the pleadings, deprives the Court of the facts needed to determine if the incident were truly "shocking to the conscience." *Hall,* 621 F.2d at 613. In the light of the *Sellers* and *Dandridge* interpretation of *Screws,* however, such an argument cannot survive. A necessary element of plaintiff's case—the allegation of intent to violate a constitutional right—is missing, and it would thus appear defendant's motion must be granted.

### CONCLUSION

This Court has previously sought the guidance of the Fourth Circuit in the morass in which decisions in this area have left the trial judges to flounder. Neither *Sellers* or *Dandridge* has been appealed as had been hoped. Until a claim, such as the one presently before this Court, is submitted to the Court of Appeals for adjudication, we (or at least I) must continue to flounder. Under the *Sellers* and *Dandridge* understanding of *Screws* a plaintiff must prove the conduct complained of—be it punishment of a school child by her teacher, beating of a prisoner by his guard, manhandling of an arrestee by a police officer—has as its motive the deprivation of some independent constitutional right, not a right that some-

how inheres in the phrase "substantive due process."

Absent some such dividing line between common law tort and constitutional tort, we are left to a two-step analysis that does little to divide one tort from the other. We determine whether, first, a State employee is the defendant and, say the cases, we can only determine shock, *vel non,* after a trial. Only after a trial in an assault and battery case can we determine whether we had jurisdiction to try the case. If we are not shocked we didn't have jurisdiction. That is a heck of a way to run a Constitution.

The lines that must legitimately and constitutionally be drawn between constitutional torts and common law torts are complicated and entangled. Unless federal courts are to become a special tribunal for the trial of tort claims where the defendant is a State employee, there must be some simplification and disentanglement. Lawyers and judges should be able to spot the difference with some degree of confidence. There should be some order and sense in the law. In hopes that it makes sense we shall continue to follow our understanding of *Screws* and demand that each such tort, before it becomes actionable under § 1983, be motivated by a further desire to deprive the plaintiff of independently protected rights.

Defendant's motion shall be granted unless plaintiff shall, within 10 days of the entry hereof, file an amended complaint setting forth her claim consistent with this opinion.

And it is so ORDERED.