Gloria BROWN, A minor child, By her next friend, Donald BROWN

v.

Elaine JOHNSON, Tamarah Jordan, Paul Velhaus, Covington Independent School Board, Dr. Donald Hunter.

No. 88–39.

United States District Court, E.D. Kentucky, Covington Division.

April 3, 1989.

Curtis H. Hatfield, Michael J. O'Hara, Covington, Ky., for plaintiffs.

Joseph B. Meyer, Covington, Ky., Bryan, Fogle & Chenoweth, Mt. Sterling, Ky., for defendants.

## OPINION AND ORDER

BERTELSMAN, District Judge.

This matter is before the court on the plaintiff's objections to the Report and Recommendation of the Magistrate, and the defendants' motions to dismiss or for summary judgment.

This is a § 1983 action in which the plaintiff, a schoolchild, alleges that her teachers violated her substantive due process rights by spanking her seven times with a paddle.

## FACTS

The underlying facts are accurately set forth in the Magistrate's Report and Recommendation.

Defendants have moved to dismiss or for summary judgment on the grounds that their actions did not amount to a substantive due process violation, that plaintiff does not have a cognizable claim for negligent training and supervision against the defendants, Dr. Hunter and the Covington School Board, and that they are entitled to qualified immunity.

## ISSUE

The issue in this matter is whether a reasonable jury find that the defendants' conduct was sufficiently egregious to "shock the conscience" so that such conduct amounted to a violation of plaintiffs' substantive due process rights?

## CONCLUSION

The Magistrate's Report and Recommendation is . correct and must be adopted. Even viewing the defendants' conduct in a light most favorable to the plaintiff, plaintiff has failed to show a genuine issue of material fact under which a reasonable jury could conclude that defendants' conduct "shocks the conscience" and amounts to a deprivation of plaintiff's substantive due process rights. Defendants' motion for summary judgment must, therefore, be granted. The court need not consider the issues of liability for negligent training and supervision or qualified immunity of the defendants.

## ANALYSIS

Magistrate Hood's legal and factual analysis in this case is correct. In *Ingraham v. Wright,* 430 U.S. 651, 683, 97 S.Ct. 1401, 1419, 51 L.Ed.2d 711 (1977), the Supreme Court held that "the Eighth Amendment's prohibition against cruel and unusual punishment is inapplicable to school paddlings." The Court also found that when state and common law remedies for excessive corporal punishment were preserved, there was no procedural due process violation. *Id.* The Court left open the question of whether the use of physical force against a public school child may give rise to an independent cause of action for violation of substantive due process rights. *Id.* at 679 n. 47, 97 S.Ct. at 1416 n. 47.

Most federal courts have held that for corporal punishment to be a violation of a student's substantive due process rights, it must fall within the "shocks the conscience" test established by the Supreme Court in *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952). In *Rochin,* the Supreme Court held that police conduct which "shocks the conscience" violates the due process clause of the Fourteenth Amendment. *Id.* at 172, 72 S.Ct. at 209. The Second Circuit applied the *Rochin* test to § 1983 police brutality cases in *Johnson v. Glick,* 481 F.2d 1028 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). The court announced the test which has been followed by the other circuits to determine whether physical force amounted to a violation of substantive due process rights:

"In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the

application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 1033.

The Fourth Circuit Court of Appeals, in *Hall v. Tawney,* 621 F.2d 607 (4th Cir. 1980), established the following inquiry in order to determine whether corporal punishment to students would give rise to a substantive due process claim:

"As in the cognate police brutality cases, the substantive due process inquiry in school corporal punishment cases must be whether the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience. *See Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973) (Friendly, J.). Not every violation of state tort and criminal assault laws will be a violation of this constitutional right, but some of course may."

621 F.2d at 613. In *Hall,* the court held that a plaintiff stated a cause of action when she alleged that she had been subjected to punishment without apparent provocation and was struck repeatedly and violently with a rubber paddle, resulting in serious injury. *Id.* at 614. The court also recognized, however, that corporal punishment does not necessarily violate substantive due process. *Id.* at 611.

In *Woodard v. Los Fresnos Independent School District,* 732 F.2d 1243 (5th Cir. 1984), the Fifth Circuit Court of Appeals held that a high school student in Texas was not denied substantive due process of law when she was given three spanks for using abusive language to a school bus driver. The court stated, "Corporal punishment is a deprivation of substantive due process when it is arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive to learning." *Id.* at 1246.

In *Brooks v. School Board of City of Richmond, Va.,* 569 F.Supp. 1534 (E.D.Va. 1983), the federal district court in Virginia held that a teacher's piercing of a student's arm with a straight pin was not sufficient to amount to a deprivation of the student's substantive due process rights. The court stated:

"Regardless of how much a trial fleshes out the bare bones skeleton, this incident, in and of itself, simply cannot descend to the level of a brutal and inhumane, conscious-shocking, episode that the Fourth Circuit requires. As the defendant aptly notes in her reply memorandum, allegations of twenty licks with a two-foot-long paddle causing a severe hematoma and loss of the use of an arm for a week did not shock the conscious of the United States Supreme Court in *Ingraham."*

569 F.Supp. at 1536. Similarly, in *Hale v. Pringle,* 562 F.Supp. 598 (M.D.Ala.1983), the court held that the use of excessive force in the infliction of corporal punishment did not violate the substantive due process rights of the student.

In *Garcia by Garcia v. Miera,* 817 F.2d 650 (10th Cir.1987), *cert. denied,* 108 S.Ct. 1220, 99 L.Ed.2d 421 (1988), the Tenth Circuit Court of Appeals dealt with a similar issue when officials at a school were sued by a student for a violation of her constitutional rights under § 1983. In *Garcia,* the student received two severe paddlings. At the first, she was beaten with a paddle until her legs were bleeding. In the second, she was shoved against a desk and hit with a paddle until a welt formed. The officials who were directly involved contended that they were entitled to qualified immunity. The district court agreed, and granted summary judgment. The Court of Appeals reversed, holding that the officials were on notice that excessive corporal punishment could violate substantive due process and that, therefore, the student had clearly established substantive due process rights which were violated. *Id.* at 657. The court held that the officials were not entitled to qualified immunity. *Id.* at 658. It also stated, however, that "[b]are allegations of

brutality in the administration of corporal punishment are insufficient to survive a motion for summary judgment," and that "[t]he threshold for recovery on the constitutional tort for excessive corporal punishment is high." *Id.*

The Sixth Circuit Court of Appeals has also recognized that the use of corporal punishment by a teacher upon a student can constitute a violation of the student's substantive due process rights. *Webb v. McCullough,* 828 F.2d 1151, 1158 (6th Cir. 1987). In *Webb,* the court stated:

"In the context of disciplinary corporal punishment in the public schools, we emphasize once more that the substantive due process claim is quite different than a claim of assault and battery under state tort law. In resolving a state tort claim, decision may well turn on whether ten licks rather than five were excessive so that linedrawing this refined may be required. But substantive due process is concerned with violation of personal rights of privacy and bodily security of so different an order of magnitude that inquiry in a particular case simply need not start at the level of concern those distinctions imply. As in the cognate police brutality cases, the substantive due process inquiry in school corporal punishment cases must be whether the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience. Not very violation of state tort and criminal assault laws will be a violation of this constitutional right, but some of course may."

*Id.* (quoting *Hall v. Tawney,* 621 F.2d at 613). In *Webb,* a high school principal on a field trip to Hawaii knocked down the door of a bathroom in which a student was locked, hit the student twice with the door, grabbed the student and threw her against the wall, and slapped her. *Webb,* 828 F.2d at 1154. The court held that whether the principal had violated the student's substantive due process rights involved disputed fact questions which precluded summary judgment. *Id.* at 1159.

In this case, the Magistrate is correct in his conclusion that there is no probative evidence upon which a reasonable trier of fact could determine that the spankings suffered by Gloria Brown were so excessive as to shock the conscience or were motivated by anything other than a desire to maintain discipline in the classroom. Magistrate's Report and Recommendation at 9. The physical force used in this case does not approach the standard required to "shock the conscience."

The actions of the teachers in paddling Gloria Brown seven times within thirty minutes do not appear to arise to the level of "shocking the conscience" as the courts have interpreted that term. These paddlings do not "descend to the level of a brutal and inhumane, conscious-shocking, episode." *Brooks v. School Board of City of Richmond, Va.,* 569 F.Supp. 1534, 1536 (E.D.Va.1983). The force applied by the teachers did not cause injury so severe or disproportionate to the need presented to violate the due process rights of the plaintiffs. Nor did it amount to "a brutal and inhumane abuse of official power literally shocking to the conscience." *Hall v. Tawney,* 621 F.2d 607, 613 (4th Cir.1980).

Although Gloria Brown was severely bruised, she was not physically injured to the extent that the students in the other cases cited were. In those cases, however, the courts refused to find a violation of the children's substantive due process rights. In *Ingraham,* the Supreme Court found that a severe beating and the resulting hematoma did not shock its conscience. In this case, Gloria Brown's injury is much milder. Therefore, even considering the undisputed facts in a light most favorable to the plaintiff, it does not appear that the teachers' conduct amounted to the brutality necessary to shock the conscience of the court.

Plaintiff asserts in her objections to the Magistrate's report and recommendation that there is a factual dispute about the misbehavior which resulted in paddlings.

She contends that this dispute precludes summary judgment. This argument is unconvincing, however. The Sixth Circuit has held that "*some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Cook v. Providence Hospital,* 820 F.2d 176, 179 (6th Cir.1987) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)) (emphasis in original). The fact that another student prompted Gloria Brown to laugh and that another student was talking in class is not material. The undisputed fact is that the teacher, Tamarah Jordan, observed Gloria's misbehavior, and felt it was necessary to discipline her. Even if Ms. Jordan was incorrect in ascertaining the need to discipline Gloria Brown, because her punishment was not excessive, the reasons for the discipline are immaterial. There is no evidence of maliciousness or sadism in Ms. Jordan's punishment of Gloria.

Plaintiff also argues that the Magistrate ignored the severity of Gloria Brown's injury and the "excessive physical pain" she experienced. She relies on the affidavits of Dr. Stephen Jennings, Sergeant Janet Radenheimer and Stephen Wilson, all of whom concluded that the punishment administered to Gloria was excessive. Contrary to plaintiff's argument, however, Magistrate Hood clearly did consider these affidavits and the extent of Gloria Brown's injury. Magistrate's Report and Recommendation at 4–5. He specifically noted on page 5 that "Dr. Jennings believed they [the bruises] were the product of excessive force and requested an investigation of the incident by the Cabinet for Human Resources."

Although severity of the injury to the plaintiff is one way to find a substantive due process violation, the facts in this case do not indicate that plaintiff's injury was so severe that it violated her constitutional rights. The courts have found that injuries much more egregious than plaintiff's do *not* shock the conscience. For example in *Ingraham,* one plaintiff was struck twenty times with a paddle causing a severe hema-toma and requiring him to miss eleven days of school, and the other plaintiff was struck on his arms on two occasions, once depriving him of the full use of his arm for a week. *Ingraham,* 430 U.S. at 657–58, 97 S.Ct. at 1405–06. Similarly, in *Brooks v. School Board of Richmond, Va.,* 569 F.Supp. 1534, 1536 (E.D.Va.1983), the court noted that the injuries received in *Ingraham* did not shock the conscience of the Supreme Court, and ruled that a teacher's piercing of a student's arm with a straight pin did not give rise to a substantive due process claim. The bruising of Gloria Brown was not nearly as severe as these injuries, and, therefore, does not arise to the level of a constitutional violation.

The fact that a doctor and a policewoman stated that the bruises Gloria Brown received were excessive is also not dispositive of the issue of the severity of the injury. In *Cunningham v. Beavers,* 858 F.2d 269 (5th Cir.1988), *cert. denied,* 109 S.Ct. 1343, 103 L.Ed.2d 812 (1989), two kindergarten children were given two swats with a paddle for misbehavior, and, when they continued to misbehave, were given three more swats. *Id.* A physician in *Cunningham* stated that the children had been excessively spanked, and social workers concluded that the spankings "clearly constituted child abuse." *Id.* The court nevertheless dismissed the § 1983 suit brought by the children on the grounds that such conduct did not arise to a violation of civil rights and that the common law and criminal law of Texas afforded the plaintiffs adequate due process protections. *Id.*

In addition, as the Magistrate concluded, "the record fails to demonstrate that the purpose behind the seven swats inflicted upon Gloria was anything but disciplinary." Magistrate's Report and Recommendation at 8. The spankings were administered as a result of the plaintiff's misbehavior and there is no allegation that the teachers involved acted out of malice towards the student. Thus, they were not "so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that [they] amounted to a brutal and inhumane abuse of official power literally shocking to

the conscience." *Hall v. Tawney*, 621 F.2d 607, 613 (4th Cir.1980). If the number of swats was excessive or the injuries inflicted were serious, they may have amounted to a violation of state tort law. They do not, however, constitute a violation of substantive due process rights under the Supreme Court's and Sixth Circuit's higher threshold for constitutional violations.

Thus, the Magistrate's conclusion that there is no evidence under which a reasonable trier of fact could determine that the spankings suffered by Gloria were so excessive to amount to a deprivation of her substantive due process rights or that they were motivated by malice is correct. Even viewing the evidence, including the affidavits, depositions and exhibits, in a light most favorable to the plaintiff, there is no indication that the punishment given to Gloria Brown was so excessive that it "shocks the conscience." Because there are no genuine disputes as to *material* facts, summary judgment for the defendants must be granted, as the Magistrate recommended.

The court need not reach the issues of supervisory liability for negligent training or qualified immunity. It does, however, dismiss the plaintiff's pendent state law claims, under the doctrine announced by the Supreme Court in *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), without prejudice so that the plaintiff may seek relief for these claims in state court. Plaintiff's claim for substantive due process violation under § 1983 must be dismissed.

Further, the court specifically notes with approval the Magistrate's discussion of the developments in the law of summary judgments. *See also* W. Bertelsman & K. Philipps, *Kentucky Practice*, Rule 56.03, Comments 4, 12 (1986 Supp.).

Therefore, the court being advised,

IT IS ORDERED as follows:

1. That the objections of the plaintiff to the Report and Recommendation of the Magistrate be, and they are, hereby overruled;

2. That the Report and Recommendation of the Magistrate be, and it is, hereby adopted as the findings of fact and conclusions of law of the court; and

3. That the motion of defendants for summary judgment be, and it is, hereby granted. A separate Judgment shall enter concurrently herewith dismissing the complaint herein.

### JUDGMENT

Pursuant to the Opinion and Order entered concurrently herewith,

IT IS ORDERED AND ADJUDGED as follows:

1. That the complaint as it relates to § 1983 claims be, and it is, hereby dismissed, with prejudice;

2. That the complaint as it relates to pendent state law claims be, and it is, hereby dismissed, without prejudice; and

3. That plaintiff shall bear the costs expended herein.

### MAGISTRATE'S REPORT AND RECOMMENDATION

JOSEPH M. HOOD, United States Magistrate.

Gloria Brown (Gloria), a nine-year old, third grade student at the First District School of the Covington Independent School District, was paddled on three separate occasions on March 3, 1987. Through her father and next friend, Gloria has filed this action under 42 U.S.C. § 1983 against the three people who paddled her, the Covington Independent School Board, and the Superintendent of the Covington Independent Schools. The matter is before the court on the defendants' motion for summary judgment. Pursuant to an order dated December 5, 1988, the matter has been referred to the undersigned for a report and recommendation. 28 U.S.C. § 636(b)(1)(B).

On March 3, 1987, Gloria engaged in several acts of misbehavior. According to her teacher, Tamarah Jordan (Jordan), Gloria did not complete her classwork for the day [Jordan Dep., p. 15]; interrupted a

spelling test by blurting out loud, crude remarks even after being told to stop disrupting the class [Jordan Dep., pp. 17–20]; and was talking in class on two occasions instead of doing her work. [Jordan Dep., p. 20].[1]

Jordan then escorted Gloria to the office of Paul Vehdhaus (Veldhaus), the Principal of First District School, as she had been warned would happen if she misbehaved in class. [Veldhaus Dep., pp. 22–23; Jordan Dep., p. 31]. Jordan informed Veldhaus that Gloria was misbehaving in class. [Jordan Dep., p. 20]. In keeping with his warning, Veldhaus directed Gloria to bend over and place her hands on a chair. He then administered two swats with a wooden paddle to Gloria's buttocks. [Veldhaus Dep., pp. 26–27.] Gloria did not cry. [Veldhaus Dep., p. 28.] When she agreed to behave, Veldhaus told Jordan to take Gloria back to class. [Veldhaus Dep., pp. 27–28].

Despite Jordan's and Veldhaus' admonitions, Gloria laughed as she was being escorted into the classroom [Jordan Dep., p. 33] when another student made a face at her. [G. Brown Dep., p. 6]. Rather than returning to her desk and completing her work as directed, Gloria began playing a game as other students were doing. When told that she could not play the game until she completed the work, Gloria responded with words to the effect that she did not intend to finish her class work. [Jordan Dep., pp. 34–36].

Jordan then took Gloria out into the hallway and summoned Elaine Johnson, another teacher to serve as a witness. After directing Gloria to bend over and grab her ankles, Jordan gave Gloria one swat with a paddle. [Jordan Dep., pp. 37–38]. Gloria did not cry or say anything. [Jordan Dep., pp. 38–39; Johnson Dep., p. 11]. Jordan and Johnson warned Gloria that if she misbehaved again, she would get four swats with the paddle. [Jordan Dep., pp. 37–38; Johnson Dep., pp. 9–10].

Despite Johnson's admonition, Gloria laughed again when the same student made a face at her as she returned to the classroom. [G. Brown Dep., p. 10; G.

Brown Affidavit, p. 2; Jordan Dep., p. 39]. Jordan thereupon took Gloria from the classroom and down the hallway to Johnson's classroom. When Johnson came out into the hallway, Jordan informed her that Gloria had laughed upon re-entering her classroom [Jordan Dep., pp 40–41]. Johnson told Gloria to bend over and, as promised, spanked her on the buttocks four times with a paddle. [Jordan Dep., pp. 39–43; Johnson Dep., p. 12]. Gloria cried a little then [Johnson Dep., p. 13], but stopped before returning to her classroom. [Jordan Dep., p. 43]. Gloria resumed her work and caused no further disruptions. [Jordan Dep., pp. 44–45].

After school that day, Jordan telephoned Donald Ray Brown (D.R. Brown), Gloria's father. [Jordan Dep., p. 46; D.R. Brown aff't, p. 1]. After informing D.R. Brown that his daughter had been spanked [Jordan Dep., p. 46; D.R. Brown Aff't, p. 1], Jordan requested a conference with him at his convenience to discuss Gloria's behavior. [Jordan Dep., pp. 46–47]. Gloria's father agreed to a conference and made no comment regarding the spanking. [Jordan Dep., pp. 46–47].

When Gloria arrived home, she made no comment regarding the spanking. Instead, she asked to go to the Boys Club with several of her friends. While driving Gloria and her friends to the Boys Club, her father overheard Gloria tell her friends that she had been paddled at school and was bruised. [D.R. Brown Dep., p. 31–32; D.R. Brown Aff't, p. 1].

After arriving at the Boys Club, the father requested one of the counselors to check Gloria. The counselor did so and informed Gloria's father that she was bruised and should be checked. [D.R. Brown Dep., p. 31; D.R. Brown aff't, p. 1].

Gloria's father immediately took her to the Covington Police Department. There, he, Sgt. Janet Radenheimer of the Covington Police Department and Barry Johnson, a social worker, examined Gloria and observed the bruises on her buttocks. When the examination was completed, her father

1. Gloria contests some, but not all, of the acts attributed to her.

took her home. [D.R. Brown Dep., pp. 31–33; D.R. Brown Aff't, p. 1].

Later that evening, after observing their daughter, Gloria's parents decided to seek medical treatment for her. Arriving at the St. Elizabeth Hospital at 9:00 P.M.—some four hours after the parents both learned of the bruises—Gloria was examined by Dr. Stephen Jennings. After observing the bruising and the pain on physical movement, Dr. Jennings believed they were the product of excessive force and requested an investigation of the incident by the Cabinet for Human Resources. [Jennings Aff't, pp. 2–3]. There is no indication in the present record as to what, if any, treatment Dr. Jennings provided.

Gloria was seen by a Dr. Longshore on March 9, 1987. After missing two days, she returned to school on March 11, 1987.

Dr. Donald Hunter (Hunter), the Superintendent of the Covington Independent Schools, conducted an investigation of the paddling of Gloria Brown. Based on this investigation, Dr. Hunter determined that the actions of Veldhaus, Jordan and Johnson were consistent with school policies and, consequently, he took no disciplinary action against them. [Hunter Dep., p. 43–53].

In their brief, the defendants state that Gloria's mother filed a criminal complaint against Veldhaus, Jordan and Johnson, charging them with willful injury to a minor in violation of KRS 208.200. According to the defendants, Veldhaus, Jordan and Johnson were tried and acquitted on these charges in juvenile court. The plaintiff does not challenge the defendants' recitation of these "facts".

The plaintiff charges the defendants with two violations of § 1983. First, it is asserted that the defendants, in both their individual and official capacities, "caused ... an unreasonable seizure of ... Gloria ... in violation of the Fourth and Fourteenth Amendments...." Second, it is alleged that the acts of Veldhaus, Jordan and Johnson, in both their individual capacities, "caused severe injury and pain, was disproportionate to the need presented, ... amounted to brutal and inhumane abuse of

official power which was literally shocking to the conscience", and constituted a violation of the substantive due process clause of the Fourteenth Amendment. A pendant state law claim is also asserted as is a claim for punitive damages.

Although the plaintiff initially raised a Fourth Amendment claim, she apparently has abandoned that claim as she states in her memorandum that the paddlings amounted to a violation of the substantive component of the due process clause of the Fourteenth Amendment. [Record No. 12, p. 7].

The Sixth Circuit has recognized that the use of corporal punishment by a teacher upon a student under certain circumstances can constitute a violation of the student's substantive due process rights. *See Webb v. McCullough,* 828 F.2d 1151, 1158 (6th Cir.1987). Speaking for the court, Judge Boggs described the parameters of the violation:

In the context of disciplinary corporal punishment in the public schools, we emphasize once more that the substantive due process claim is quite different than a claim of assault and battery under state tort law. In resolving a state tort claim, decision may well turn on whether ten licks rather than five were excessive so that linedrawing this refined may be required. But substantive due process is concerned with violation of personal rights of privacy and bodily security of so different an order of magnitude that inquiry in a particular case simply need not start at the level of concern those distinctions imply. As in the cognate police brutality cases, the substantive due process inquiry in school corporal punishment cases must be whether the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience. Not every violation of state tort and criminal assault laws will be a viola-

tion of this constitutional right, but some of course may.

*Id.* (citations omitted) (quoting *Hall v. Tawney*, 621 F.2d 607, 613 (4th Cir.1980)).

An examination of the facts in *Webb* is helpful in understanding a substantive due process claim in the context of disciplinary corporal punishment. Wendy Webb (Webb) was on a school trip to Hawaii with the school band, a trip chaperoned by the school principal, Thomas McCullough (McCullough). Webb shared a hotel room with three other girls. After discovering a teenage boy in their room as well as a six-pack of beer and a quart of wine in an unoccupied room, adjacent to and sharing a balcony with, the girls' room, McCullough told Webb and her roommates that they were being sent home.

Upset, Webb locked herself into the bathroom. The principal was called to the room.

> McCullough was quite angry when he realized Webb was in the bathroom. He tried to jimmy the bathroom door lock, but Webb would not let him in. He then slammed the door three or four times with his shoulder. The door finally gave way, knocking Webb against the wall. McCullough then thrust the door open again, and it struck Webb again, throwing her to the floor. He then grabbed Webb from the floor, threw her against the wall, and slapped her. ..."

*Webb,* 828 F.2d at 1154.

The *Webb* panel distinquished the type of battery described above from that in *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). In *Wright,* a high school student who was slow to respond to a teacher's instructions was struck on his buttocks with a wooden paddle, and another student was struck on the arms. These blows were disciplinary blows, inflicted as punishment for the proper education and discipline of the child. *Id.* at 670, 97 S.Ct. at 1412.

On the other hand, in *Webb,* the record did not indicate that the blows inflicted upon the plaintiff were in any way disciplinary. 828 F.2d at 1158. Since there was a failure to show a purpose behind the blows other than anger or malice, the Sixth Circuit determined that Webb's substantive due process claim could withstand a motion for summary judgment. *Webb,* 828 F.2d at 1159.

Here, the admitted blows were struck in the school context, where the need for immediate disciplinary control is at its greatest. Likewise, the record fails to demonstrate that the purpose behind the seven swats inflicted upon Gloria was anything but disciplinary. Although seven swats with a paddle within a thirty-minute period might be excessive under Kentucky tort law, a substantive due process claim requires proof of a greater magnitude. *Wise v. Pea Ridge School District,* 855 F.2d 560, 565 (8th Cir.1988); *Webb,* 828 F.2d at 1158–59. Further, the record shows that each of the three separate spankings was witnessed by a female teacher and conducted outside the presence of the other students in accordance with school policy. Finally, it is uncontroverted that Jordan telephoned Gloria's father, informed him that his daughter had been spanked and asked him to attend a conference regarding Gloria's misbehavior.

Summary judgment is granted only when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The Supreme Court and the Sixth Circuit now recognize that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules...." *Id.* at 327, 106 S.Ct. at 2555. Having reviewed the record including the depositions, affidavits and exhibits in a light most favorable to the plaintiff, the undersigned finds that there is no probative evidence upon which a reasonable trier of fact could determine that the spankings suffered by Gloria were motivated by anything other than a desire to maintain discipline in the classroom. *Cunningham v. Beavers,* 858 F.2d 269, 271–72 (5th Cir.1988); *Wise,* 855 F.2d at 564–65; *compare Webb,* 828 F.2d at 1154.

Having determined that the defendants are entitled to summary judgment on the plaintiff's § 1983 substantive due process claim, the undersigned believes the court should dismiss the plaintiff's pendant state claim as well. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

Accordingly, it is recommended that the defendants' motion for summary judgment on the plaintiff's § 1983 substantive due process claim be granted. It is further recommended that the plaintiff's pendant state law claim be dismissed as well, but without prejudice to the plaintiff's right to seek relief in the Kentucky courts.

Particularized objections to this Report and Recommendation must be filed within ten (10) days of the date of service of the same or further appeal is waived. *Thomas v. Arn,* 728 F.2d 813 (6th Cir.1984), *aff'd,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wright v. Holbrook,* 794 F.2d 1152, 1154–55 (6th Cir.1986). A party may file a response to another party's objections within ten (10) days after being served with a copy thereof. Rule 72(b), Fed.R.Civ.P.

This the 14th day of February, 1989.