**Lucas JONES, et al., Plaintiffs,**

v.

**James WITINSKI, et al., Defendants.**

**Civil No. 4:94–CV–1818.**

United States District Court,
M.D. Pennsylvania.

June 28, 1996.

Marc F. Lovecchio, Williamsport, PA, for plaintiffs.

J. David Smith, Sean P. Roman, McCormick Reeder Nichols Sarno Bahl & Knecht, Williamsport, PA, for defendants.

## *MEMORANDUM*

McCLURE, District Judge.

## BACKGROUND

Plaintiff Lucas Jones brought this action by and through his parents, Norma and Darrell Jones, to recover for injuries allegedly sustained as a result of disciplinary measures taken by defendant James Witinski,[1] Lucas' seventh grade mathematics teacher. Plaintiff's allegations stem from an incident which occurred on November 18, 1992. Plaintiff and his fellow students agreed before class began that they would engage in unison coughing to disrupt the class. As soon as Witinski entered the room, the students, as previously agreed, began coughing and would not cease when Witinski demanded order. According to Lucas, this sustained coughing lasted approximately eight to ten minutes. The coughing eventually ceased, and Witinski lectured three students who engaged him in an argument. Witinski told those students their parents would be ashamed of their conduct. Witinski had his back to Lucas when he made that statement. Lucas repeated the statements, Witinski turned and asked Lucas what he had said. Witinski told him to leave the classroom. According to plaintiff, Witinski then grabbed his arm and pulled him toward him, across Lucas' desk. Lucas banged into the desk then somehow bumped into the bulletin board, striking his arm, and ended up on the floor.

Plaintiffs assert claims under section 1983, 42 U.S.C. § 1983, for the alleged violation of Jones' civil rights. Plaintiffs also assert state law claims of assault and battery against Witinski (Counts IV and V of plaintiffs' complaint).

The case was assigned to Magistrate Judge Durkin. In a report and recommendation dated March 18, 1996, Magistrate Judge Durkin recommends that the court deny defendants' motion and list the case for trial. No objections were filed to the report and recommendation of the magistrate judge.

For the reasons which follow, we decline to adopt the recommendation of the magistrate judge and will grant the motion for summary judgment in part. Judgment will be entered in favor of defendant Witinski on the section 1983 claims. We decline to exercise supplemental jurisdiction over the remaining state law claims asserted and will dismiss those claims without prejudice.

## DISCUSSION

### Standard of review of magistrate judge's report

Plaintiff did not file objections to the magistrate judge's report and recommendations. In the absence of objections, the court is not statutorily required to review the magistrate judge's report before accepting it (28 U.S.C. § 636(b)(1)) and *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985)), although the better practice is for the district judge to afford "some level of review to dispositive legal issues raised by the report." *Henderson v. Carlson,* 812 F.2d 874, 878 (3d Cir.1987).

### Summary judgment standard

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

> ... [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential ele-

1. This action was initially filed against the Berwick Area School District and the Berwick Area Middle School as well. Witinski is the sole remaining defendant.

ment of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The moving party bears the initial responsibility of stating the basis for its motions and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. He or she can discharge that burden by "showing ... that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 323 and 325, 106 S.Ct. at 2552 and 2553.

Issues of fact are " 'genuine' only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph,* 842 F.2d 689, 693–94 (3d Cir.1988), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). Material facts are those which will affect the outcome of the trial under governing law. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *White v. Westinghouse Electric Company,* 862 F.2d 56, 59 (3d Cir.1988).

### Substantive Due Process Violation

 Plaintiffs can establish a section 1983 violation only by demonstrating that defendants violated Lucas' federal constitutional rights.[2] *Gonzalez v. Torres,* 915

F.Supp. 511, 515 (D.P.R.1996). It has been well established since 1977 that disciplinary corporal punishment of public school students by teachers or administrators does not give rise to an Eighth Amendment violation. *Ingraham v. Wright,* 430 U.S. 651, 671, 683, 97 S.Ct. 1401, 1412, 1419, 51 L.Ed.2d 711 (1977).[3]

Such conduct may, however, give rise to a claim under the Substantive Due Process Clause of the Fourteenth Amendment.[4] *Metzger By and Through Metzger v. Osbeck,* 841 F.2d 518, 521 (3d Cir.1988). Borrowing from principles applied in use of excessive force claims arising in a law enforcement setting, the Third Circuit held in *Metzger* that a student's substantive due process rights are violated by disciplinary corporal punishment if the force applied ·"exceeded the degree of force needed to correct ... [the student's] alleged breach of discipline and ... the substantial injuries sustained by ... [the student] served no legitimate disciplinary purpose." *Id.* at 520. If the teacher or school official acted "with the intent" of causing harm to the student, he or she is "subject to liability for crossing the 'constitutional line' separating a common law tort from a deprivation of a substantive due process." *Id.* at 520–21. Whether constitutional rights are implicated depends upon the degree of force used, the injury, if any, sustained, and the methods employed. *Hall v. Tawney,* 621 F.2d 607, 613 (4th Cir.1980).

Some judges have expressed reservations about the continuing viability of the "shocks the conscience" standard after the Supreme Court's decision in *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), rejecting the application of the sub-

---

**2.** Section 1983 provides in relevant part:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....
 42 U.S.C. § 1983.

**3.** In *Ingraham,* the Supreme Court declined to consider whether students have a right under

any other part of the Constitution to remain free from excessive corporal punishment. *Ingraham,* 430 U.S. at 659 n. 12, 97 S.Ct. at 1406 n. 12.

**4.** Acceptance of this principle is not universal. The Fifth Circuit has never recognized a substantive due process claim for excessive corporal punishment. *Fee v. Herndon,* 900 F.2d 804 (5th Cir.), *cert. denied,* 498 U.S. 908, 111 S.Ct. 279, 112 L.Ed.2d 233 (1990) and *Ingraham v. Wright,* 525 F.2d 909, 917 (5th Cir.1976) (en banc), *aff'd on other grounds,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977).

stantive due process standard in favor of the Fourth Amendment's "objective reasonableness" standard. Writing in concurrence in *Lillard v. Shelby County Board of Education,* 76 F.3d 716 (6th Cir.1996), Justice Nelson of the Sixth Circuit Court of Appeals stated: "Although the Supreme Court apparently assumes that this rather fuzzy test has some continuing role, see *Collins v. City of Harker Heights, Texas,* 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992), and subsequent to *Graham v. Connor* a number of courts of appeals, including this one, have applied the test in a variety of other contexts, I see no reason for us to do so here." *Lillard,* 76 F.3d at 730. The United States Supreme Court's application of the "shocks the conscience" test to a substantive due process claim in *Collins* supports its continued application in corporal punishment cases.

Strictly speaking, Jones does not allege that he was subjected to excessive corporal punishment. Our interpretation of his claim is that Witinski used excessive force in attempting to remove him physically from his chair and propel him toward the door after ordering him to leave the classroom. The allegations are, however, closely enough allied with claims of corporal punishment that cases involving the latter apply analogous principles and provide useful guidelines for deciding defendant's summary judgment motion.

A series of cases have fleshed out the parameters of public school students' substantive due process right not to be subjected to excessive corporal punishment. Beating a student so severely that he or she requires hospitalization plainly exceeds the threshold necessary to establish a constitutional violation, the Fourth Circuit held in *Hall.* There the plaintiff alleged that she had been subjected to punishment for no apparent reason and had been struck repeatedly and violently with a rubber paddle. *Id.* at 614. After the beating, Hall was taken to the emergency room of a nearby hospital "where she was admitted and kept for a period of ten (10) days for the treatment of traumatic injury to the soft tissue of the left hip and thigh, trauma to the skin and soft tissue of the left

thigh, and trauma to the soft tissue with ecchyniosis of the left buttock." *Id.*

The teacher's conduct in *Garcia by Garcia v. Miera,* 817 F.2d 650 (10th Cir.1987), *cert. denied,* 485 U.S. 959, 108 S.Ct. 1220, 99 L.Ed.2d 421 (1988) also rose to the level of a constitutional violation. Garcia was severely paddled on two separate occasions. On the first occasion, she was struck until her legs were bleeding. On the second occasion, she was pushed against a desk and hit with a paddle until a welt formed. The district court agreed with defendants' assertion of qualified immunity and granted summary judgment in their favor. That ruling was reversed on appeal to the United States Court of Appeals for the Tenth Circuit. Commenting on the sufficiency of the evidence to survive defendants' motion for summary judgment, the Tenth Circuit stated:

> ... [t]his nine-year-old girl was held up by her ankles and hit several times with a split board of substantial size on the front of her legs until they bled—supported by evidence of a permanent scar—are sufficient. The allegations with respect to the second beating, that the punishment was severe enough to cause pain for three weeks—supported by pictures of the injured buttocks, an affidavit from an examining doctor that in his long experience he had not seen bruises like that from routine spankings, and an affidavit from an examining nurse that if a child had received this type of injury at home she would have reported it as child abuse—are also sufficient. These claims may not survive the crucible of trial, but they overcome defendants' motion for summary judgment.

*Id.* at 658.

In *Webb v. McCullough,* 828 F.2d 1151, 1158 (6th Cir.1987), plaintiff Wendy Webb alleged that while she was on a trip to Hawaii with the school band, school principal Thomas McCullough knocked down a locked bathroom door, hitting her twice with the door in the process, grabbed her, threw her against the wall, and slapped her. *Webb,* 828 F.2d at 1154. Webb had locked herself in the bathroom after being told that she and her roommates were being sent home because a teenage boy had been discovered in

their room and because school officials had found alcoholic beverages in an adjoining, unoccupied room. McCullough became quite angry with Webb when she refused to come out of the bathroom and tried to jimmy the door lock. When that did not work, he slammed the door three or four times with his shoulder. When the door gave way, it struck Webb. McCullough then allegedly picked Webb up off of the floor, threw her against the wall, and slapped her. *Webb*, 828 F.2d at 1154. The Sixth Circuit held that because McCullough acted out of malice or anger, not out of an effort to discipline Webb or restore order, constitutional liability could attach to his conduct. *Webb*, 828 F.2d at 1158–59. The Court held:

> ... [B]ecause McCullough was *in loco parentis* to Webb and because it is possible that the blows were not disciplinary in nature, a trier of fact could find that under the circumstances, McCullough's need to strike Webb was so minimal or non-existent that the alleged blows were a brutal and inhumane abuse of McCullough's official power, literally shocking to the conscience. This makes summary judgment inappropriate.

*Id.* at 1158.

In *Metzger*, the defendant walked up behind the plaintiff and placed his arms around plaintiff's neck and shoulders. With his arms in that position, defendant questioned plaintiff about his use of foul language. During the course of the questioning, defendant moved his arm up slightly to a position just beneath plaintiff's chin, forcing plaintiff to stand on his toes to avoid being choked. When defendant released plaintiff from his hold, plaintiff lost consciousness and fell to the pool deck, suffering lacerations to his lower lip, a broken nose, fractured teeth and other injuries requiring hospitalization. *Metzger*, 841 F.2d at 519–20.

On the other side of the coin, the courts have dismissed claims for conduct below the threshold of a constitutional violation. Even seemingly harsh or unfair punishments have been held by the courts not to constitute a constitutional violation. In *Brown v. Johnson*, 710 F.Supp. 183 (E.D.Ky.1989), a nine-year old student alleged that she had been spanked seven times with a paddle on three separate occasions over a thirty minute period. The student was severely bruised from the spanking. The United States District Court for the Eastern District of Kentucky, nevertheless granted the defendants' motion for summary judgment, finding that neither the punishment inflicted nor the injuries sustained shocked the conscience of the court. *Id.* at 186.

Pricking a student in the arm with a straight pin does not rise to the level of a constitutional violation, the United States District Court for the Eastern District of Virginia held in *Brooks v. School Board of Richmond*, 569 F.Supp. 1534, 1535 (E.D.Va. 1983). The court stated: "Regardless of how much a trial flesh out the bare bones skeleton, this incident, in and of itself, simply cannot descend to the level of a brutal and inhumane, conscience-shocking, episode that the Fourth Circuit requires." *Id.* at 1536.

A single slap, which did not result in physical injury, even if given for no legitimate purpose, does not rise to the level of a constitutional violation, the Sixth Circuit held in *Lillard*. The court stated: "[I]t is simply inconceivable that a single slap could shock the conscience. We do not quarrel with a suggestion that Leventhal's actions were careless and unwise; but they fall far short of 'brutal,' or 'inhumane,' or any of the other adjectives employed to describe an act so vicious as to constitute a violation of substantive due process." *Id.* at 726. The court went on to stress that while it certainly did not condone or excuse the teacher's conduct, it could not find that one slap, "even if made for no legitimate purpose, rises to the level of a constitutional violation. While Leventhal should reasonably expect to face serious consequences for his treatment of Lillard, those consequences should not be found in a federal court through the mechanism of a section 1983 action." *Id.* See also: *Hale v. Pringle*, 562 F.Supp. 598 (M.D.Ala.1983).

Fewer cases have addressed the issue of alleged psychological abuse, a component of plaintiff's claim. Plaintiff alleges that he has suffered continuing psychological trauma as a result of the November 18, 1992 classroom incident. Plaintiff testified that he has suf-

fered humiliation and teasing from his schoolmates as a result of this incident.

Non-physical cases of harassment, or abuse, other than sexual abuse, have applied the same "shocks the conscience" standard. In *Abeyta v. Chama Valley Independent School District,* 77 F.3d 1253, 1258 (10th Cir.1996), the twelve-year-old plaintiff alleged that her teacher had called her a prostitute in front of the class. While finding the teacher's conduct reprehensible, the Court of Appeals also found his conduct below the constitutional threshold. The court stated:

A teacher who calls a student a prostitute engages in a complete abuse of his authority. To do so repeatedly, and turn a deaf ear as other students follow the teacher's example, is flagrant misconduct. But we must leave plaintiff to whatever relief statutory or state tort law may afford her. ... [W]e hold that taking plaintiff's claims as true they do not state an actionable § 1983 claim ...

*Abeyta,* 77 F.3d at 1258.

■ To summarize, conduct which gives rise to a state law tort claim does not necessarily give rise to a constitutional claim. The threshold for establishing a constitutional tort for excessive corporal punishment is a high one. The plaintiff must allege more than the commission of an ordinary common law tort. *Abeyta,* 77 F.3d at 1257. The Sixth Circuit explained the distinction between the two in *Webb* stating:

In the context of disciplinary corporal punishment in the public schools ... the substantive due process claim is quite different than a claim of assault and battery under state tort law. In resolving a state tort claim, decision may well turn on whether ten licks rather than five were excessive ... so that line-drawing this refined may be required. But substantive due process is concerned with violations of personal rights of privacy and bodily security of so different an order of magnitude that inquiry in a particular case simply need not start at the level of concern those distinctions imply. As in the cognate police brutality cases, the substantive due process inquiry in school corporal punishment cases must be whether the force

applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience ... Not every violation of state tort and criminal assault laws will be a violation of this constitutional right, but some of course may.

*Webb,* 828 F.2d at 1158 (Emphasis supplied.), quoting *Hall v. Tawney,* 621 F.2d at 613. See also: *Brooks,* 569 F.Supp. at 1538. Corporal punishment rises to the level of a constitutional deprivation only when it is "arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive to learning." *Woodard v. Los Fresnos Independent School District,* 732 F.2d 1243, 1246 (5th Cir.1984).

In the words of Judge Friendly, often quoted in civil rights actions brought against law enforcement officers, but not out of place here: "Not every push or shove, even if it may later seem unnecessary in the peace of the judge's chambers, violates a prisoner's constitutional rights." *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973).

■ We do not find that level has been met here. By all accounts, Witinski grabbed plaintiff by the arm and pulled him toward him across his desk. The accounts of what happened at that point differ somewhat. However, taking plaintiff's version of the incident as true, it is still plain that Witinski did not act out of malice or an intent to inflict harm.

In his brief filed in opposition to defendant's motion, plaintiff states that Witinski pulled Lucas "completely over a desk and either dragged, pushed or pulled him several feet at which point the minor Plaintiff's body impacted upon a bulletin board after which the minor Plaintiff fell to the ground." (Plaintiffs' opposing brief at p. 14). That description is not consistent with plaintiff's recollection of the incident.

The plaintiff is not entirely certain how he ended up on the floor. Plaintiff recalls the incident as follows:

A. ... He [Witinski] said get out of my room. So I went to stand up, and the next thing I knew I was on the floor.

Q. How did you end up on the floor? ...

A. He grabbed my arm and he pulled me over the desk, and in the process I hit my private spot.

....

A. Then I went into the bulletin board because I remember hitting—there was a part that comes down that is metal. I hit the metal part on the bulletin board and fell to the ground.

Q. What arm did he grab?

A. My left.

Q. And how hard did he grab you?

A. I don't remember.

Q. How long did he grab you?

A. I don't remember.

Q. Can you describe the amount of force that he used when he grabbed you?

A. No.

....

A. I was beginning to stand up, and next thing I knew I was on the floor.

....

Q. Did your desk fall?

A. No.

....

Q. When he grabbed your ... left arm, did he leave any marks, whether it be bruises of any type or perhaps finger marks even?

A. No.

....

Q. Did it hurt at the time when he grabbed you?

A. I don't remember.

....

Q. Now, when Mr. Witinski ... pulled you from your desk, where exactly did you fall?

A. I remember hitting this because that hurt.

Q. Meaning the empty desk?

A. Yes.

Q. What part of your body hit the empty desk?

A. My private.

....

A. I remember hitting that. And I remember falling and getting caught up in the wires.

Q. ... Now, did you fall flat on the ground before you hit the board?

A. No, I hit the board and then fell.

Q. ... How did you end up over at the bulletin board?

A. I don't remember.

Q. After hitting the empty desk and the bulletin board, did Mr. Witinski still have ahold of you?

A. No, he let go.

Q. ... What part of you hit the bulletin board first?

A. My arm.

....

Q. Did [hitting the bulletin board] leave a mark on your skin?

A. Yes.

....

A. It was a bruise.

....

Q. ... After you hit the bulletin board, what happened then?

A. I fell to the ground.

....

A. And I remember starting to get up and stumbling again because I was tangled in the cords that were hanging, because when I fell I like got caught up in them. I remember getting up and holding my arm and going down like this towards the door (indicating), and I began to cry.

....

Q. I guess in the process of your fall you got caught in the wires?

A. Yes.

....

Q. And then you went towards the door?

A. Yes.

Q. Did you go out the door?

A. No, I didn't get a chance to.

Q. Why not?

A. Because he came over and asked me if I was okay.

. . . .

A. I said I'm fine. He goes, do you want to go to the nurse. I go, no. I said, it's near the end of the day, I'll just stay.

. . . .

A. I took my seat. He repeatedly asked me if [I] wanted to go to the nurse. Are you okay. Are you okay.

. . . .

Q. Was he still angry at that point?

A. No.

. . . .

Q. ... After Mr. Witinski asked you repeatedly if you wanted to go to the nurse, you just sat in your chair at that point?

A. Um-hum.

Q. Did class go on? Did he teach class at that point?

A. No. The class period was pretty much done, because with all of this coming together it just took the whole class period almost. There might have been like ten minutes left in class, and he just didn't do anything besides sit behind his desk.

Deposition of L. Jones, pp. 16–28.

Pulling a student by the arm is not "a brutal and inhumane abuse of official power literally shocking to the conscience." *Hall v. Tawney,* 621 F.2d at 613. See also: *Metzger,* 841 F.2d at 520.

The fact that Jones may have sustained serious injury as a result of the fall is extremely unfortunate, but does not alter the character of Witinski's acts. It appears from all the evidence before us that Witinski never intended to harm Jones nor cause him to fall against the bulletin board. There is no evidence which suggests otherwise. Unlike *Metzger,* there is absolutely no evidence in this case from which a reasonable trier of fact could find intent to harm.

According to Jones, Witinski was immediately very concerned and apologetic and offered several times to have him seen by the school nurse. Jones characterized Witinski's demeanor as "scared" and stated that he made no attempt to teach during the ten or so minutes remaining the class, but simply remained at his desk after repeatedly asking Jones if he wanted to be seen by the school nurse and receiving a negative answer.

There is nothing before us to suggest that Witinski's grabbing the plaintiff was anything other than a disciplinary measure. See, e.g. *Brown,* 710 F.Supp. at 187. Cf. *Webb.*

The fact that this was an isolated incident adds to the impression that the results were not intended, and that Witinski did not willfully pull Jones across the desk with the intent of causing him injury. Prior to this, Witinski had handled what disciplinary problems he may have had with Jones by moving Jones' desk. Jones testified:

A. ... [T]hat's why I was over by his desk, because I would talk in class and stuff. Not when he was teaching. It was like when we were off in groups and stuff, and I would disrupt the rest of the group.

. . . .

Q. Was the only punishment that Mr. Witinski gave you prior to the incident was moving your desk?

A. Yes.

Deposition of L. Jones, pp. 61–62.

We measure Witinski's conduct not by the unintended consequences, but by the act which set this chain of events in motion. Grabbing a student's arm to propel him toward the door is not a constitutional violation under the standard adopted by this circuit in *Metzger.*